### Executive Chamber.

*December,* 1885.

### MATTER OF MITCHELL.

#### EXTRADITION.

The extradition will not be ordered of a person who was not actually present in the State where he is alleged to have committed the crime at the time of the commission thereof, and who has not actually fled from the justice of that State, and who is not found as a fugitive in this State.

Such presence of the accused party in the demanding State at the time of the commission of the alleged offense is a jurisdictional fact, which ust be proved when his extradition is demanded.

APPLICATION for the extradition of Thomas Mitchell.

The facts appear in the opinion.

HILL, Governor—The Governor of the State of New Jersey has issued his requisition, directed to the Governor of this State, requesting the arrest of Thomas Mitchell, as a fugitive from justice from New Jersey, and his delivery to an agent of that State named in the requisition. Mitchell has been temporarily arrested in New York city, but is being detained in this State awaiting the decision of this application, and his counsel have applied and been permitted to be heard in opposition to his surrender, and the authorities of New Jersey are also represented by counsel who have been heard in favor thereof.

The right of a State to demand, and the obligation of a State upon which the demand is made to surrender a citizen rest exclusively upon the Federal Constitution and the act of Congress of 1793. The Constitution declares that "a person charged in any State with treason, felony or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime." The act of Congress passed in 1793 to carry this constitutional provision into effect and to provide a mode of procedure under it is as follows:

SEC. 1. Whenever the executive authority of any State or Territory demands any person, *as a fugitive from justice*, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory, *from whence the prisoner so charged has fled*, it shall be the duty of the executive authority of the State or Territory to which such person has

fled, to cause him or her to be arrested, and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or the agent, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear.

No copy of an indictment accompanies the requisition in this case, and none seems to have been found, but there is an affidavit made by a police officer taken before a justice of Jersey City, charging Mitchell with having committed the offense of manslaughter at Jersey City on November twenty-fifth last. There is also annexed to such requisition another affidavit made by a policeman, stating that he knows Mitchell, and that Mitchell "has fled from the State of New Jersey, and is now in the city of New York." Upon the hearing before me, both the prosecution and the defense introduced further affidavits bearing upon the questions involved.

It seems that the charge of manslaughter arises from the alleged ownership by Mitchell of a building situate in Jersey City, which building was some time injured by fire and only a portion of its walls was left standing, and on November twenty-fifth such walls fell and thereby killed four persons, and it is charged that such accident was occasioned by the unsafe condition in which the walls had been permitted to remain by the owner, who, by reason thereof, was guilty of criminal negligence constituting manslaughter.

The ownership of the premises is disputed, and if I were permitted to determine that question in this proceeding, I should find as a question of fact that Mitchell was not the owner thereof.

It further appears that Mitchell is and has been for many years a resident of the city of New York; that he was not in the State of New Jersey at the time of the accident and had not been there for some weeks prior thereto; that he was in the city of New York at the date of that occurrence, attending to his usual business, and did not know of it until he afterwards read the account of it in the newspapers; and he makes an affidavit explicitly denying that he has fled from the State of New Jersey, or that he is in any sense a fugitive from justice.

The question is presented whether, under these circumstances, a proper case is made out requiring his surrender to the authorities of New Jersey.

It is settled that all inquiry into his guilt or innocence of the crime charged is wholly irrelevant in this proceeding. That question is to be investigated and determined by the courts of the State where the alleged crime was committed. People *ex rel.* Lawrence *v.* Brady, 56 *N. Y.* 182–187. For the purposes of this proceeding it is sufficient that he is duly charged in another State with the commission of a crime against the laws of that State.

There is, however, an important question involved in this case, which can properly be determined in this proceeding. The Supreme Court of the United States has held, that upon the executive of the State in which the accused is found rests the responsibility of determining whether he is a fugitive from the justice of the demanding State. *Ex parte* Reggel, 114 *U. S.* 643. While there are some authorities in this State and elsewhere which may be claimed to hold a contrary doctrine (People *ex rel.* Draper *v.* Pinkerton, 17 *Hun*, 199; 77 *N. Y.* 245), the decision of the highest court in the country upon a question of this character may safely be followed.

A bare inspection of the act of Congress shows that it does not require the surrender of an accused party, unless it be made to appear that he is *in fact* a fugitive from justice. The determination of that question must necessarily rest with the executive of the State wherein the accused is arrested.

It has been held that the fact that a party has been indicted for an offense which, in its own nature, implies the actual presence of the offender within the jurisdiction of the demanding State, is sufficient *prima facie* evidence of his having fled from justice when found in the other State. Leary's Case, 6 *Abbott's N. C.* 44–46. But this rule does not apply to offenses which, from their own nature, do not imply the actual presence of the offender within the demanding State. The present case is one of the latter class. The offense here charged may be complete under the laws of New Jersey, although the accused may never have been within that State. The theory under

which the prosecution must proceed is, that the accused was *constructively* present. But it is held that the provisions of the United States Constitution and the act of Congress for extradition are confined to those who are actually and not merely constructively present in the demanding State, when they commit the acts charged against them. Wilcox *v.* Nolze, 34 *Ohio St.* 520.

The actual presence of the accused party in the demanding State, at the time of the commission of the alleged offense, is a jurisdictional fact. It must be proved, like any other fact. It may be rebutted the same as any other fact. If such actual presence cannot be established the accused party cannot be said to be a fugitive from justice. The Supreme Court of Indiana has held that "one who, at, and continuously after, the alleged time of the commission of a crime by him in another State, has been within this State, is not a 'fugitive from justice.'" Hartman *v.* Aveline, 63 *Ind.* 345.

In *Hurd on Habeas Corpus* (2d ed. p. 612) it is said: "There must be an actual fleeing from justice, and of this the Governor of the State of whom the demand is made, as well as of the State making it, should be satisfied. This is commonly shown by affidavit."

The Supreme Court of Iowa has held that "a citizen and resident of Iowa who is charged with having been constructively guilty of an offense in another State upon which a requisition is based, but never, in fact, has fled therefrom, is not a fugitive from justice within the meaning of the Constitution. Jones and Atkinson *v.* Leonard, 50 *Iowa*, 106.

In the present case it is not pretended that Mitchell was present in New Jersey at the time the alleged offense was committed. It is conceded that on that day he was in our own State, of which he was and is a resident. It is not claimed that there has been any *actual* fleeing from New Jersey. There has been neither flight nor concealment shown. All the elements necessary to constitute the accused a "fugitive from justice," within the meaning of the authorities, seem to be lacking. The affidavit of the policeman which accompanies the requisition, asserting in general terms, and without explana-

tion, that Mitchell "has fled from the State of New Jersey and is now in the city of New York," is entitled to no weight whatever upon this question, in view of the other conceded facts of the case to which reference has been made. It is evident that he only meant to swear to a conclusion of law, viz., to a constructive flight, based upon the fact of Mitchell's being charged with crime in one State and of his being found in another. He could not have known of any *actual* flight, because there was none. Mitchell remained at his own home in this State, both before, at, and since the date of the alleged commission of the crime. "It is difficult to see how one can flee who stands still." 1 *Iowa,* 108.

Bouvier defines a fugitive from justice to be "one who, having committed a crime in one jurisdiction, goes into another, in order to evade the law and avoid punishment." 1 *Bouvier's Law Dictionary,* 551.

The prosecution in this case is compelled to take the position that the accused was constructively in New Jersey at the time the crime is alleged to have been committed, and that he has constructively fled therefrom. But the constitution of the United States does not require New York to surrender, on the demand of a sister State, as a fugitive from justice, one who constructively fled from the latter.

It will be claimed that there are many crimes which can be committed by an owner of property against the laws of a sister State arising out of the ownership of property therein, although the owner may be a resident of this State and may never have departed therefrom, and if the position here contended is correct, it must follow that in all such cases no extradition whatever can be had. It is a sufficient answer to such argument that those instances are comparatively few in number, and that they have not been provided for either in the constitution or the laws of Congress.

If there is no authority for extradition in certain cases, it ought not to be granted, no matter what the consequences may be. "The governor of a State is not to become an official kid-

napper, in order that the guilty may be punished." *Spear on the Law of Extradition*, 2d ed. 400.

In the late edition of the excellent work last above cited, issued in 1884, this whole subject is ably reviewed, and the following conclusion is arrived at: "The truth is that the constitution contains no provision for the extradition of a person who is not present in the State where he is assumed to have committed the crime, and who has not actually fled from the justice of that State, and who is not, as a fugitive, found in another State, and who does not choose to go to that State."

Governor Robinson passed upon substantially this same question in the year 1877, and refused to surrender one Henry W. Baldwin upon a requisition from Governor Bedle of New Jersey. It appeared that Baldwin was a resident of this State, and was charged, with other directors of a New Jersey insurance company, with "conspiracy to defraud," alleged to have been committed in New Jersey on a certain date, but at which date he was in fact in the State of New York, although he had recently prior thereto visited New Jersey on business somewhat connected with matters out of which the "conspiracy" was said to have arisen; but Governor Robinson held that even under such circumstances the crime, if any, was committed in this State where Baldwin resided, and that he was not a fugitive from justice. (See public papers of Lucius Robinson, pages 170 to 177.)

These precedents, in my opinion, are conclusive of the question here involved.

Even if there was doubt about it, I should still be disposed to refuse the application, because the power of extradition vested in the executive is a high prerogative which should be cautiously and judiciously exercised, and only in clear cases should it be invoked.

A surrender by authority of the executive sends a resident of his own State to another State, away from his bail, friends and home,—for trial.

The executive owes a duty to the citizens of his own State to protect them in their just rights and to guard them from improper arrests at the instance of officers from other States

acting under doubtful authority, especially where such arrests are for the purpose of compelling them to answer for crimes which, if committed at all, have only been constructively committed against the laws of such State.

I shall not lend my official sanction to a doctrine which would permit a citizen of New York, who had never been out of the State in his life, to be seized and carried away to Oregon or any other State, to be tried on an indictment found against him in such State.

It follows that I must respectfully decline to comply with the requisition in this case.

---

## APPENDIX A.

### RULES FOR APPLICATIONS FOR EXTRADITION.

#### STATE OF NEW YORK, EXECUTIVE CHAMBER.

The following rules will be observed by the Governor of the State of New York in reference to applications for requisitions on Governors of other States and Territories, and the Chief Justice of the Supreme Court of the District of Columbia. (*U. S. R. S.* § 5278; *R. S. relating to the District of Columbia*, § 843.)

The application must be made by the district attorney of the county in which the offense was committed, and must be in duplicate original papers, except indictments, which must be certified copies.

The following must appear by the certificate of the district attorney:

*A.* The full name of the person for whom extradition is asked, together with the name of the agent proposed, to be accurately spelled, in Roman capital letters, for example, JOHN DOE.

*B.* That in his opinion the ends of public justice require that the alleged criminal be brought to this State for trial, at the public expense, and that he is willing that such expense be a charge on the county in which the crime was committed.

*C.* That he believes he has sufficient evidence to secure a conviction of the fugitive.

*D.* That the person named as agent is the proper person, a public officer (naming his official position), and that he has no interest in the arrest of the fugitive.