## Court of Appeals.

October 7, 1902.

# THE PEOPLE EX REL. CORKRAN v. JAMES L. HYATT, as Chief of Police of the City of Albany.

(172 N. Y. 176.)

1. EXTRADITION—CONSTITUTIONAL LAW—COMITY.

The extradition from one State to another of a fugitive from justice does not depend on comity or contract, but on the provisions of the Constitution of the United States.

2. FUGITIVE FROM JUSTICE—PRESENCE IN DEMANDING STATE.

The constructive presence in the demanding State at the time of the commission of the alleged crime is not sufficient to make the alleged offender a fugitive from justice, or extraditable as such, but his actual presence therein at such time is necessary.

3. SAME.

That one not personally present in a State at the date of the commission of the alleged crime of larceny and false pretenses was subsequently present in the State a single day nearly a year before the institution of any prosecution against him does not entitle such State to demand him from another as a fugitive from justice.

4. ASYLUM FOR CRIMINALS.

The doctrine of the necessity of the corporeal presence within a State of an offender at the time of the commission of an alleged offense therein to render him a fugitive from justice and extraditable from another State, does not tend to render the several States' asylums for criminals who may inflict injury upon persons or property within a State when not actually present therein, since each State has the power to punish crimes committed within its borders.

5. TRIAL—STIPULATION—CONSTRUCTION.

A stipulation that an alleged offender sought to be extradited for offenses charged to have been committed on specified dates was not in the demanding State at the time of the offenses charged, cannot be limited as an admission only that the accused was not in the State at the particular dates alleged in the indictment, but must be construed as an admission of his absence when the crimes were committed, especially where such view is confirmed by the argument of the counsel making the stipulation.

6. HABEAS CORPUS—REVIEW OF WARRANT.

The action of the governor of the State in issuing a warrant for the extradition of an alleged fugitive from justice can be reviewed by writ of habeas corpus.

7. ALIBI.

Mere proof that one accused of crime and sought to be extradited was not within the demanding State at the time of the commission of the offense, does not necessarily require or justify his discharge in requisition proceedings or on habeas corpus, since the guilt or innocence of an alleged fugitive from justice cannot be determined therein.

8. EVIDENCE—WARRANT.

A warrant issued by a governor of a State for the extradition of an alleged offender does not conclusively establish the facts recited therein, but they are to be taken as presumptively true in the first instance.

9. JUDICIAL KNOWLEDGE.

On habeas corpus proceedings to inquire into the cause of detention of one held under an extradition warrant, the facts recited in the warrant or stipulated by counsel are all the court can judicially know concerning the circumstances of the alleged crime, where the record does not contain the indictment or other proof as to the facts.

10. STIPULATIONS—RECITALS IN EXTRADITION WARRANT.

Stipulations or admissions of counsel entered upon the record in a habeas corpus proceedings to inquire into the cause of detention of one held under a warrant of extradition, overcome every contrary presumption arising from the facts stated in the warrant.

11. OFFENDER'S PRESENCE IN DEMANDING STATE—PRESUMPTION.

The surrender of one accused of crime in another State, in violation of the rule that extradition will be granted only where the offense was committed by one actually present in the demanding State, is not warranted on the theory that it may be shown upon the trial that the accused actually committed the crimes at a later day than laid in the indictment while temporarily in the State for a few hours, where no claim is made that such is the fact. (People ex rel. Corkran v. Hyatt, 72 App. Div. 629, reversed.)

APPEAL from an order of the Appellate Division of the Supreme Court in the Third Judicial Department, entered May 26, 1902, which affirmed a final order of Special Term dismissing a writ of habeas corpus and remanding the relator to custody.

The facts, so far as material, are stated in the opinion.

Adelbert Moot and William L. Marcy, for appellant.

J. Murray Downs and Robert G. Scherer, for respondent.

CULLEN, J.: The relator was arrested and held under a mandate or warrant of the governor of this State issued on the requisition of the governor of the State of Tennessee for the delivery of the relator as a fugitive from justice. The mandate of the governor recites that it has been represented to him that the relator stands charged in the State of Tennessee with having committed the crime of larceny and false pretenses in the county of Davidson, and that he had fled from said State and taken refuge in the State of New York. By stipulation between the parties it was conceded that the indictments attached to the requisition papers under which the governor issued his warrant were found on the 26th day of February, 1902, and that the alleged crimes charged in the indictments were committed on May 1, 1901, May 8, 1901, and June 24, 1901, respectively. At the hearing had on the return of the writ of habeas corpus it was further stipulated between the parties that the relator was not in the State of Tennessee at the time of the commission of any of the offenses charged against him, but in the State of Maryland, which was his residence. It appeared by his testimony that he went to Nashville in Tennessee on the second day of July, 1901, to accept the resignation of one Albright, the president and treasurer of the American Hardwood Company, in which the relator was interested, and was then elected president of the company in said Albright's stead; that that evening he left Nashville and never was again in the State of Tennessee except passing through there on the 16th or 17th of July. It is not claimed that the offenses for which the extradition of the relator was sought were committed when he was in the State of Tennessee, but it is contended that though not corporeally present at the time of the commission of the offense he may nevertheless be properly surrendered as a fugitive from the justice of that State where it was committed.

It is to be premised that the power of a government to

punish for extraterritorial crimes is a very different question from that of its right to require the surrender to it from foreign countries for trial and punishment persons alleged to have committed such offenses. Some governments assume to impose the obligations of their penal laws either in whole or part on their citizens, no matter where they may be. We have a notable example of this rule in the recent punishment of a British peer for an alleged bigamy committed in the United States. Some governments assume to go even further and punish an alien for an offense committed against their citizens, though the offense is committed in a foreign jurisdiction. Publicists and writers on international law differ greatly as to the right of a government to punish for offenses committed without its territory. A full review of this subject is to be found in the work of Mr. John Bassett Moore, late assistant secretary of State of the United States, on "Extra Territorial Crime." The power of any government to punish for such an offense necessarily depends upon its ability to obtain possession of the defendant; and though each government assumes to define its own powers, still it may be restrained by the action of the government of which the offender is a citizen, invoked on his behalf, as was the case in the controversy between this country and Mexico in relation to which the report of Mr. Moore was written. Not so with extradition between the States of the Union; it is not governed by international law, but depends solely on the provisions of the constitution of the United States and the act of Congress made from it. The power of a State to punish a fugitive from justice after obtaining custody of his person depends in no way on how that custody was obtained. Even if the offender has been kidnapped in another State and brought within the territory of the prosecuting State, that fact does not affect the jurisdiction of the latter to punish him for the offense. (Kerr v. Illinois, 119 U. S. 436; Cook v. Hart, 146 U. S. 183.) Nor will a person be relieved from prosecution

at the intervention of the State from which he was abducted by violence. (Mahon v. Justice, 127 U. S. 700.) In Lascelles v. Georgia (148 U. S. 537) it was said: " If the fugitive be regarded as not lawfully within the limits of the State in respect to any other crime than the one on which his surrender was effected, still that fact does not defeat the jurisdiction of its courts to try him for other offenses any more than if he had been brought within such jurisdiction forcibly and without any legal process whatever." It was there held that interstate rendition did not depend on comity or contract, but on the provisions of the constitution of the United States. It will thus be seen that the condition of a citizen of one State surrendered to another for criminal prosecution has not the safeguards which exist in international extradition, for the surrendering State is without any standing to intervene in his behalf however much its process may be abused. Therefore, it necessarily follows that no person can or should be extradited from one State to another unless the case falls within the constitutional provision, and that the power which independent nations have to surrender criminals to other nations as a matter of favor or comity is not possessed by the States.

The provision of the constitution of the United States (art. 4, sec. 2, subd. 2), is: " A person charged in any State with treason, felony or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime." Under this Congress has enacted (sec. 5278): " Whenever the executive authority of any State or territory demands any person as a fugitive from justice, of the executive authority of any State or territory to which such person has fled, and produces a copy of an indictment found or an affidavit . . . charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or territory from whence the

person so charged has fled, it shall be the duty of the executive
authority of the State or territory to which such person has fled
to cause him to be arrested  .  .  .  and to cause the fugitive
to be delivered  .  .  .  ."   It will be seen that to authorize
or require a State to surrender to another State an alleged
offender it is necessary not only that such person stand charged
with crime, but that he has fled from justice.   What consti-
tutes a fugitive from justice has been the subject of much dis-
cussion by eminent text writers and of many decisions by the
courts and by the governors of the several States.   There seems
to be substantial unanimity in all the authorities on one propo-
sition, that to be a fugitive from justice a person must have
been corporeally present in the demanding State at the time
of the commission of the alleged crime.   " The case, and the
only case, for which the constitution provides, is that of a per-
son who is charged with crime in one State and who flees to
and is found in another State.   This is the whole of the case."
(Spear on Extradition, 311.)   " The question of constructive
presence at the commission of a crime has frequently arisen in
the case of obtaining money or goods by false pretenses, and it
has been held that such presence in the demanding State is
not sufficient as a basis for a requisition for the surrender of a
person as a fugitive from justice, although, if the person
charged were to come within the jurisdiction of that State, he
might be arrested and punished for the false pretenses there
committed while he was corporeally elsewhere."   (Moore on
Extradition, sec. 584.)   In Matter of Reggel (114 U. S. 642)
it was said by Mr. Justice HARLAN:  " Undoubtedly, the act
of Congress did not impose upon the executive authority of the
territory the duty of surrendering the appellant, unless it was
made to appear, in some proper way, that he was a fugitive
from justice.   In other words, the appellant was entitled,
under the act of Congress, to insist upon proof that he was
within the demanding State at the time he is alleged to have
committed the crime charged, and subsequently withdrew from

her jurisdiction, so that he could not be reached by her criminal process." In Roberts v. Reilly (116 U. S. 80) it is said by Mr. Justice MATTHEWS: "To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party charged should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another." In Matter of Voorhees (3 Vroom, 141), a fugitive is designated as one "who commits a crime within a State and withdraws himself from such jurisdiction." In Wilcox v. Nolze (34 Ohio State, 520), it is said, referring to the constitutional provision: "These words, taken as they must be in their natural and obvious sense, do not include a case of constructive presence in the demanding State and constructive flight therefrom, but relate only to a case where the accused is actually present in the demanding State at the time he commits the act of which complaint is made." The same principle has been held in Hartman v. Aveline (63 Ind. 344); Jones v. Leonard (50 Iowa, 106); Matter of Mohr (73 Ala. 503; In re Jackson (2 Flippin, 183); Ex parte Smith (3 McLean, 121). It is stated in a note found in Mr. Moore's work on Extradition (p. 948) that "the Interstate Extradition Conference held in New York city in August, 1887, refused to adopt a recommendation to the governors of the various States and territories that no demand be complied with where the fleeing was constructive, on the ground that the decisions of the courts already covered the case."

Hibler v. State (43 Texas, 197), is not in conflict with these authorities, for there a fugitive from justice was defined to be "A person who commits a crime in one State for which he is indicted, and departs therefrom and is found in another State."

The only case cited as authority for a contrary doctrine is In re Cook (49 Fed. Rep. 823), reported in the Supreme Court as Cook v. Hart (146 U. S. 183). In the opinion there delivered by the district judge it is said: " One may commit an offense against a State upon whose soil he has never set foot." I have already said this may be true, but it does not determine the question whether the offender is a fugitive from justice. In that case the petitioner was under arrest in Wisconsin, having been extradited by the governor of the State of Illinois. He sought relief from imprisonment by writ of habeas corpus from the United States Circuit Court for Wisconsin. The question of the propriety of his extradition was, therefore, not properly before the court, and the decision of the Circuit Court remanding the relator was affirmed by the Supreme Court on the express ground that it was immaterial how the relator's presence in Wisconsin had been secured; that it was sufficient that at the time of the writ he was subject to its territorial jurisdiction. Nor did the case in fact require from the learned judge the statement cited. The relator was charged with having as a banker fraudulently received deposits. He had been in the State of Wisconsin a few days before, and knowing the bank to be insolvent, gave his clerks directions to receive deposits. His subsequent departure from the State, under all the authorities, made him a fugitive from justice.

The question discussed has never been passed upon by the courts in this State, but has been considered by several of our governors. In Matter of Mitchell (4 N. Y. Crim. Rep. 596) will be found an opinion by Governor Hill on an application for the extradition of Thomas Mitchell. Mitchell was charged with having committed manslaughter in Jersey City by reason of his ownership of an unsafe building in that place which fell and killed four persons. It appeared that Mitchell had not been in New Jersey for some weeks prior to the accident. The governor refused to extradite him, holding that " The actual presence of the accused party in the demanding State,

at the time of the commission of the alleged offense, is a juris-
dictional fact." This view has been accepted by the governors
of Massachusetts, of Maryland, of Tennessee and of Illinois.
(See Moore on Extradition, sec. 579, *et seq.*) It is claimed
that this court has held a contrary doctrine in Adams v. Peo-
ple (1 N. Y. 173). The defendant Adams was indicted and
convicted for obtaining money under false pretenses under a
fraudulent warehouse receipt which he transmitted from
Chillicothe, in Ohio, to the prosecutors, merchants in New
York city. The case in no respect involved the question of
the constitutional obligation of the governor of Ohio to sur-
render the defendant to the authorities of the State of New
York, but only of the power of this State to punish him after
having secured jurisdiction of his person. Under the author-
ities already cited from the Supreme Court of the United
States it was of no importance how the jurisdiction of his per-
son was obtained.

If the relator was not otherwise subject to extradition to the
State of Tennessee, because he was not personally present in
that State at the commission of the alleged offenses, his subse-
quent presence in the State for a single day, nearly a year be-
fore the institution of any prosecution against him, could give
that State no right to require his surrender. The question is
whether he is a fugitive from justice, not whether the courts
of the State of Tennessee have jurisdiction of his alleged
offenses. That jurisdiction they have at all times, if at all,
provided they secure his person. I am at a loss to imagine
how a man's voluntary visit to a State can constitute him a
fugitive from the State when he was not such before. I con-
sider it as having exactly the contrary effect. If there be any
force in this occurrence it must be not in his going into the
State but in his failing to remain there. It is not, however,
suggested that he in any respect offended against the laws of
Tennessee while present there. He went there for a specific
purpose, and his business accomplished, immediately left. It

is not pretended that his stay was curtailed or that he left the State on account of any suspicion of a prosecution. Would he have been liable to extradition because on_a journey to New Orleans his route passed through the State of Tennessee? Such a result seems to me utterly unreasonable. No distinction can be drawn between the two cases. In the case of Adams, already referred to, the prisoner sought discharge from arrest by habeas corpus, and the opinion of Judge VANDERPOEL of the Superior Court of the city of New York denying the application is found in 7 Law Rep. (p. 386). Adams came voluntarily into the State, and after making an engagement to meet one of the prosecutors, suddenly left the State and failed to keep his engagement. The decision proceeded on the ground that the evidence justified the inference that the prisoner prematurely departed from the State with the view of avoiding arrest and prosecution for his crime. The case has not escaped criticism, though its doctrine may be correct when limited to the facts of the case; that is to say, a departure from the State to avoid prosecution, of which there is no suggestion in the case before us. In truth, however, the questions discussed by the court were not properly before it at all. They could have been raised in the State of Ohio, but not in New York.

It is urged that this doctrine of the necessity of corporeal presence in the State when the offense is alleged to have been committed will render the several States asylums for criminals, the effect of whose offenses is injury to property or persons in other States. There is no practical danger of the kind. It may be safely stated that nearly every State, as well as our own, punishes crimes committed within the State, although the results of the crimes are effected without its territory. The relator would be properly surrendered to the State of Maryland, where he was at the time of his alleged offense, if that State made demand for him. On the other hand, there is great danger that citizens may be carried into other States to be punished for acts which are not criminal in the jurisdiction

in which they were committed.    The case of false pretenses is a notable example.    By our Penal Code (sec. 544) it is provided that " A purchase of property by means of a false pretense is not criminal, where the false pretense relates to the purchaser's means or ability to pay, unless the pretense is made in writing and signed by the party to be charged."    This was doubtless dictated by the knowledge that criminal charges of false pretenses are often instituted in reality to compel the payment of debt, and are easily fabricated.    It may be that this provision of the Code has no extraterritorial effect, and that a citizen of this State if found in another State may be punished there for alleged oral pretenses made here.    But neither the Constitution or the Federal statute requires this State to surrender him for prosecution in another jurisdiction. These considerations equally apply to prosecutions for libels alleged to have been committed in newspapers published here and circulated throughout the country.    The real evil of the day is not the insufficiency of the criminal laws, but the excessive multiplication of statutory crimes.

It is suggested (though not by counsel) that I have construed the stipulation of the counsel for the State of Tennessee too broadly and that it was intended to admit only that the defendant was not in Tennessee at the particular dates alleged in the indictment, not that he was absent from Tennessee at the commission of the offenses charged against him.    The brief of the learned counsel entirely disposes of this suggestion.    He makes but two points:  1. " A person charged with crime may be extradited although he was not within the demanding State at the time of  the commission of the alleged offense;" 2. " The Supreme Court is limited on habeas corpus to review but one question, namely, the question of identity."    I have, therefore, but followed the counsel's own construction of his admission.

We now reach the question whether the action of the governor can be reviewed on habeas corpus:   It has been held by the Supreme Court of the United States in Robb v. Connolly

(111 U. S. 624), that the governor of a State in the execution of the duty of surrendering fugitives imposed by the Constitution and the statute of Congress does not act as a United States officer and that a writ of habeas corpus may be issued by the State courts to test the validity of an arrest under his warrant. In Roberts v. Reilly (*supra*) it was said: "How far his (the governor's) decision may be reviewed judicially in proceedings in habeas corpus, or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court." In Cook v. Hart (*supra*), it was held: "We have no doubt that the governor upon whom the demand is made must determine for himself, in the first instance at least, whether the party charged is in fact a fugitive from justice, but whether his decision thereon be final is a question proper to be determined by the courts of that State." The constitution and laws of the State of New York, therefore, control the decision of the question we are now considering. While doubtless to a certain extent the action of the governor is executive or ministerial, it is not so in the broad sense in which the general functions of the office are conferred upon him by our constitution. In Matter of Guden (171 N. Y. 529), we held that the power given to the governor to remove a sheriff upon charges and after a hearing was executive and the exercise of that power not subject to review by the courts. But the question here is of an entirely different character. It involves the liberty of the citizen. Speaking of the division of powers among the three great branches of the government, PARKER, Ch. J., in the Guden case, said: "There resides in the people of this and every State an absolute power to prescribe rules of action, through legislation, to enforce rules of action and to transact generally the affairs of government, through executive acts, and to determine controversies between, enforce rights belonging to, and redress wrongs done to, citizens of the State, through the courts." The liability of the citizen to arrest and detention,

and the grounds therefor, therefore, necessarily present a judicial question, though the arrest and detention are effected by an executive or ministerial officer. The act of Congress provides that a copy of the indictment or the affidavit before a magistrate shall be proof of the charge of crime against any person whose extradition is sought, but it does not prescribe what shall be evidence that he is a fugitive from justice. The fact that he is a fugitive is, therefore, a matter of proof. While the warrant of the governor is presumptive evidence of the fact, there is no reason on principle why it should be conclusive. It was said by Judge JENKINS in Matter of Cook (supra), referring to the case of Roberts v. Reilly: "That decision by its very terms implies that the action of the governor is only presumptively regular, and can be reviewed by the courts. Surely it cannot be claimed that such action is conclusive upon personal right, and may not be inquired of by judicial tribunals. Surely it cannot be that the right to personal liberty hangs upon so slender a thread as the arbitrary will of the authorities of the demanding and surrendering States. 'No person shall be deprived of life, liberty or property without due process of law.' That is the fundamental law of the land, coming to us from *Magna Charta*. It is not due process of law which condemns without hearing, which convicts without trial. . . . It is essential to compliance with such executive demand that the person whose surrender is demanded should be adjudged a fugitive from the justice of the demanding State. The decision of the executive is not conclusive of that fact." The writ of habeas corpus is in this State available to every person imprisoned or deprived of his liberty, unless he is restrained under the authority of the Federal government, or unless he is committed by virtue of a final judgment or decree of a competent tribunal of jurisdiction, or the final order of such a tribunal punishing him for contempt. The warrant of the governor is not a final judgment nor a decree, and even were it such it would be the

duty of the court to see whether the jurisdictional facts exist which are necessary to authorize the action of the governor. The provision of section 827 of the Code of Criminal Procedure, directing that any person arrested on the governor's mandate shall be brought before a judge of a court of record and informed of his right to a writ of habeas corpus to inquire into his identity with the person named in the warrant does not assume to limit the inquiry on a writ of habeas corpus to the question of identity. It was enacted for the benefit of any person arrested under such a warrant and solely as an additional safeguard against illegal removal from the State. As was held in People ex rel. Tweed v. Liscomb (60 N. Y. 560), "This writ cannot be abrogated, or its efficiency curtailed, by legislative action. . . . The remedy against illegal imprisonment by this writ, as it was known and used at common law, is placed beyond the pale of legislative discretion, except that it may be suspended when public safety requires, in either of the two emergencies named in the constitution." If, therefore, on the return to the writ it is clearly shown that the relator is not a fugitive from justice and there is no evidence from which a contrary view can be entertained, which is the fact in this case, as appears by the stipulation and concession of the parties, there is no reason why greater efficacy should be given to the warrant of extradition than to the warrant of any other magistrate by which a citizen is imprisoned or deprived of his liberty. In People ex rel. Lawrence v. Brady (56 N. Y. 182) this court discharged the relator, who was held under a warrant of extradition issued by the governor of the State, on the ground that the affidavit on which the surrender was asked did not state a crime. In People ex rel. Draper v. Pinkerton (77 N. Y. 245) the only question decided was whether the warrant of the governor recited the facts necessary to confer authority under the constitution and laws of the United States and was sufficient justification for holding the prisoner to be brought up on habeas corpus without producing

the papers or evidence upon which the governor acted. It was held that the recitals were to be taken as *prima facie* true, no proof to the contrary having been introduced by the prisoner. In People ex rel. Jourdan v. Donohue (84 N. Y. 438) again the only question was the sufficiency of the executive warrant on its face. Referring to criticisms that had been made on the decision in the Lawrence case the court said: " And hence we have held that where the preliminary papers upon which a warrant of extradition has been granted are produced, and are before us, it is our right and our duty to examine them, and judge and determine, when our process is invoked, whether they are sufficient, under the law, to justify the warrant of extradition. Our ruling in this respect has not escaped criticism; but an opposite conclusion, which would make the determination of the executive final, even though the papers produced clearly showed that the essential preliminaries of the law were unfulfilled, does not yet commend itself to our judgment." In all these cases the question related to the sufficiency of the charge against the prisoner, not to his being a fugitive. But if the courts can review the action of the governor on one prerequisite for extradition, it is difficult to see why they cannot equally review his action on the other. The great weight of authority in other States is in favor of such a review. It was so held in the cases of Jones v. Leonard (*supra*); Wilcox v. Nolze (*supra*); Hartman v. Aveline (*supra*), and Matter of Mohr (*supra*). In the Wilcox case it is said: " Whether or not the accused committed the acts complained of while actually present in the demanding State is jurisdictional, and it is clearly competent, in such case, to show by parol evidence a defect in the executive power, however regular the extradition papers may be in matter of form." In the Jones case it is said: " The governor of this State is not clothed with judicial powers, and there is no provision of the constitution or laws of the United States or of this State which provides that his determination is final and conclusive in

the case of the extradition of the citizen. In the absence of such a provision we hold that the decision of the governor only makes a *prima facie* case; that it is competent for the courts in a proceeding of this character to inquire into the correctness of his decision, and discharge the prisoner." In the Mohr case the learned court said: "We are of opinion that the probate judge did not err in discharging the petitioner, and that it was competent for him to hear oral evidence in order to establish the fact that the petitioner was not a fugitive from justice. Any other conclusion than this would establish a doctrine very dangerous to the liberty of the citizen. It would greatly impair the efficacy of the proceeding of habeas corpus, which has been often characterized as the great writ of liberty, and may be regarded, not less than the right of trial by jury, as one of the chief corner stones in the structure of our judiciary system. It might justly be considered as alarming to announce that a writ which has so frequently been used for centuries past to prevent the encroachment of kings upon popular liberty is inadequate for the just purposes for which it has been invoked in this case."

There is little to be added to what has been so well said by the jurists of other States. The further suggestion, however, may be made, that no law gives a person sought to be extradited the right to a hearing before the governor or to submit evidence in his behalf. Whatever in these respects may be accorded by the governor to the accused is a matter of favor, not of right. Therefore, unless he may review his extradition on habeas corpus, a citizen, on the *fiat* of an executive officer, without a hearing, may be transported a prisoner to the utmost confines of the country. It has been held by the Supreme Court of the United States that in the case of foreign extradition there must be some competent evidence before the magistrate to authorize the surrender of the accused. (Ornelas v. Ruiz, 161 N. Y. 502.) But if the orders made below are upheld, in the case of interstate extradition, a citizen may be

surrendered without the slightest evidence either of his guilt or that he is a fugitive.

The guilt or innocence of an alleged fugitive from justice is not to be determined on requisition proceedings, nor on the writ of habeas corpus. Therefore, if the charge is such as to necessarily require the presence of the accused within the State at the time of the commission of the offense, mere proof of an alibi would not in every case require or justify his discharge. But the question in the present case is not one of alibi, for the stipulation of the parties admits that the defendant was not personally present in the State of Tennessee at the commission of the alleged offenses.

For these reasons the orders of the Special Term and the Appellate Division should be reversed and the relator discharged from custody.

O'BRIEN, J.: I agree with Judge CULLEN in his exposition of the principles applicable to this case. It may possibly be useful to add to this very clear and able exposition of the law some suggestions with a view of eliminating from the case certain considerations that are misleading and wholly foreign to the questions involved and a word with respect to the functions of the writ of habeas corpus and the procedure thereon in cases of interstate extradition. It is declared by statute to be a State writ to inquire into the cause of detention and in a proper case to discharge the person from all restraint of his liberty. In some cases the writ cannot issue at all, namely, in cases where the restraint or detention is by virtue of a mandate from a court or judge of the United States in cases where such court or judge has exclusive jurisdiction. Neither can it issue in a case where the party is detained by virtue of the final judgment or decree of any competent tribunal civil or criminal. (Code, sec. 2016.)

The applicant for the writ must show affirmatively in his petition that he is not detained under any such process, and should it appear upon the hearing that he is, then he must be

remanded.    (Code, secs. 2032-33.)    In other words, when
certain facts are made to appear as the cause of the detention
the inquiry can go no farther, but must stop and the applicant
must be remanded, however unjust in point of fact his deten-
tion may be.    In all other cases there are no limitations upon
the scope of the inquiry, but it must proceed until the issue is
determined according to the rules of law applicable to such a
case.    The burden in the first instance is upon the officer or
party who detains the person to show that such detention is
authorized by some legal authority. ·

The relator in this case was not detained under process from
any court, civil or criminal, but under an executive warrant
commanding the defendant to deliver him to an agent of an-
other State, to be brought to that State for trial upon a charge
of crime alleged to have been committed in that State, and
hence all the facts were open to inquiry.    The defendant made
return to the writ that he detained the relator under this war-
rant, but exhibited no other document or paper to sustain the
warrant.    The warrant on its face stated that it had been
represented to the governor of this State by the governor of the
State of Tennessee that the relator was charged in that State
with the crime of larceny and false pretenses and that he had
fled from that State and taken refuge in this State.    These
statements on the face of the warrant were to be taken as pre-
sumptively true in the first instance, and, if the inquiry rested
there, the defendant had made out a *prima facie* case to justify
the detention.    It is important here to note and to keep always
in view that when the defendant presented the executive war-
rant without any other document or paper or any other proof
of the facts therein stated he raised only a presumption.    The
warrant did not conclusively establish the facts recited.    It
was so held by this court (People ex rel. Lawrence v. Brady,
56 N. Y. 182), and the law as laid down in that case has never
been modified but has been repeatedly approved.    Indeed, I
do not understand that there is now any difference of opinion

as to the legal effect of the warrant as evidence. It raised a presumption but nothing more. I am not aware of any case in any court of controlling authority where it was held to be conclusive and no reason is given why it should be.

But a mere legal presumption is good and justifies an act only until it is removed by proof of some other fact, and when so removed the act stands without authority or justification. That, in my opinion, is just what happened in this case as will appear hereafter. It must be borne in mind all the time that we know nothing and can know nothing judicially concerning the facts or circumstances of the larceny and false pretenses charged in the warrant. The record does not even contain the indictment or any paper or proof as to the facts, if any, that transpired in the demanding State. All we know or can know are the things recited in the warrant. The statute provides (Code, sec. 2039), that the relator may, under oath, deny any material allegation of the return or state any fact to show that his detention was illegal or that entitled him to his discharge. The relator did-so traverse the return and thus put the facts stated in the warrant in issue. The court thereupon was required to proceed in a "summary way to hear the evidence" and dispose of the case as justice required. The relator proved one material fact conclusively and that was that he was not within the demanding State at the time of the commission of the crime as that fact was averred in the indictment. I do not mean that his oath on that point was conclusive, but the proof was of a higher character, namely, the stipulation of the respective attorneys in open court. These were admissions upon the record that import absolute verity for all the purposes of the inquiry and they had the legal effect to remove every presumption to the contrary that arose from the face of the warrant. (1 Greenleaf's Ev., sec. 186.) It is important to understand the real scope and effect of these admissions. They were (1) That three indictments were at-

tached to the requisition papers upon which the warrant was
issued and as they were not produced we know nothing as to
their contents except as stated in the admission and that state-
ment was: (2) That all of them were found on Feb. 26, 1902,
and the alleged crimes were charged in the indictments to have
been committed on May 1, 1901, May 8, 1901, and June 24,
1901, respectively. So that we simply know that the relator
was charged with three distinct offenses of larceny and false
pretenses committed on the dates above stated. (3) It was also
admitted and stipulated that the relator was not within the
State of Tennessee between May 1, 1899, and July 1, 1901,
but was in that State on July 2, 1901.

These are all the facts that the demanding State elected to
disclose upon the hearing of the writ of habeas corpus as the
grounds for taking the relator from this State against his will
into another jurisdiction. Not a single fact is before us that
raises any question as to the constructive presence of the
relator in the demanding State on the dates named in the in-
dictment or that would warrant even the suspicion that he
committed the crimes charged by means of an innocent agent.
All that is said upon that subject is pure conjecture without
any fact upon which to build up the speculation. On the
record before us the relator was presumptively personally
present in the demanding State at the dates named and there
took and carried away the property claimed to have been
stolen or he did not and could not commit the offense charged
in that State at all. It having been conclusively established
that the relator was not in the demanding State on the dates
when the crimes are charged to have been committed, it fol-
lows that he could not have committed the offenses and cer-
tainly could not have fled from the justice of the demanding
State. The authorities are unanimous in holding that a per-
son cannot be a fugitive from the justice of the demanding
State who was not in that State when the crime charged is
alleged to have been committed. Constructive presence fur-

nishes no basis for executive action.    The cases on that sub-
ject are collected in a note to the case of State of North Caro-
lina v. Hall (28 L. R. An. 289).    The presumption arising
from the recitals in the executive warrant was completely
overthrown by the admissions upon the hearing before the court
that the relator was not in the demanding State at the dates
when it was alleged that the crimes were committed, and this
left the warrant, under which the relator was in custody, with-
out any basis upon which to rest.

This proposition is met only in one way and by one line of
argument which should now be noticed.    It is suggested that
since the relator was in the demanding State on the 2d day of
July, 1901, for a few hours on a temporary errand of business,
that he may have committed some or all of the crimes charged
while there on that day, and that since the precise dates stated
in the indictment are not material, it may be shown upon the
trial that he actually did commit the crimes on that day and
hence this court should send the relator to the demanding State
for trial.    This suggestion may possibly have the merit of
ingenuity, but as a method of reasoning or argument, or as a
judicial utterance in a case involving personal liberty, it is to
be hoped that this court will not adopt it.    The State of Ten-
nessee and its agent were represented at the hearing upon the
writ by able counsel.    All the facts and circumstances con-
stituting the alleged crimes were open to inquiry.    It could
have been shown that there was or might have been a mistake
in stating the dates in the indictment, or it could have been
shown that the crimes were actually committed on the 2d day
of July following, but nothing of the kind was claimed or even
suggested.    The demanding State, its agent and counsel, for
some reason, elected to withhold all proof of the facts and cir-
cumstances of the alleged larcenies and to stand upon the bare
recitals in the warrant.    The *prima facie* proof that the State
gave, consisting only of the recitals of the warrant, that the
relator was personally present there at the dates named and

committed the crimes, was superseded and removed by the solemn and conclusive admissions in open court that he was not there at the time, and consequently could not have fled from justice. When the prosecution alleges and proves a larceny committed at a designated time and place, and makes no claim that it was committed at any other time or place, and the accused then shows by conclusive proof that he was not in the State on the days designated, nor for a year before, nor for eight days after, and the case rests upon these facts alone, without any proof to justify even a suspicion that the crime was committed eight days after the date laid in the indictment, it would be a strange rule of law that would permit the case to go to the jury in order to procure a finding that, after all, the time laid in the indictment was a mistake and the crime was committed by the accused at the later date.

But the case of Roberts v. Reilly (116 U. S. 80) is cited to sustain this line of argument, and an expression of the learned judge who spoke for the court is made prominent. This court and every other court has often commented upon the value of isolated judicial expressions in an opinion as authority. The facts of the case upon which the decision was based must be compared with the one in hand in order to enable us to interpret the decision and the language of the opinion. The difference in the facts of that case and the one at bar is so radical and fundamental that it will be seen at a glance that it has no application.

(1) In that case the State of New York, the demanding State, took a very different course from that adopted by the demanding State in the case at bar. It did not rest its right upon the recitals of the warrant, but produced all the papers upon which it issued, thus disclosing to the court all the facts and circumstances constituting the crime charged. The warrant was there supported by all the preceding facts and the recitals became wholly immaterial; not so here, since the re-

citals give us all the light we have, and they are conclusively contradicted by the admissions of record.

(2) Not only did the court have all the papers before it, but proof was given *dehors* the record as to all the facts and circumstances of the crime. There was full disclosure and nothing was withheld, so that at the close of the hearing the question whether the accused was or was not a fugitive from justice was one of fact. Not so in this case, since, after the admissions, we have not a single fact left to show that the relator fled from the State of Tennessee.

(3) In that case there was nothing but the oath of the accused that he was not in the demanding State at the time charged in the indictment, and that was of no consequence against all the other proof to show that he was. His oath was not conclusive, whereas in the case at bar we have an admission that is conclusive that he was not in the State at the time, and nothing to place against it unless we are to presume that the crime was committed on the 2d day of July, when no one claims that it was. The court ought not to presume that the crime was committed on that day against the allegations of the indictment and without any claim from any source that it was. If presumptions are to be made in such a case, they should be in favor of personal liberty and not against it.

But the question whether the relator committed larceny in the State of Tennessee at any time when he was personally present there is not really in the case at all, since there is not now and never was any serious claim that he was in that State when the crimes charged were committed, otherwise than constructively. Constructive presence in the demanding State is the sole basis of the claim that the relator fled from its justice, and as already suggested, there is no case or authority that I am aware of that sustains such a claim. All the cases are the other way, and we must either disregard these cases or adopt the fiction that the offenses were really committed by the relator while he was in the State on July 2, 1901.

It may before closing be profitable to call special attention to a case quite similar, since it shows how such cases as this are considered and disposed of by courts in the demanding State of Tennessee. I refer to the case of State of Tennessee v. Jackson (1 L. R. An. 370), which is quite instructive. It appears that Jackson resided in Chicago. He sold to the prosecutor, who resided at Chattanooga, a horse, the bargain having been made by correspondence. The horse was shipped to the purchaser by rail at the place last named and he remitted by mail to Jackson at Chicago the purchase price. When the horse arrived his qualities were found to be such that the purchaser claimed to have been defrauded out of the price by false and fraudulent statements. He proceeded to obtain a warrant from a justice of the peace at Chattanooga against Jackson in Chicago, charging him with obtaining money by fraud and placed the warrant in the hands of a detective who made an affidavit that Jackson had fled from the State of Tennessee and had taken refuge in the State of Illinois. On this affidavit and warrant he procured a requisition from the governor of Tennessee on the governor of Illinois for the delivery to him of Jackson. Armed with these papers the detective proceeded to Illinois and obtained a warrant from the governor of that State for the arrest of Jackson. He arrested him on the warrant, hurried him off to Tennessee and there had him tried before the justice of the peace, convicted and sent to jail. It will thus be seen that Jackson was not only extradited from his home in another State but actually tried and convicted in the demanding State. But Jackson sued out a writ of habeas corpus in Tennessee and was discharged on the ground that all the proceedings were based upon a falsehood, namely, that he had fled from Tennessee where he had never been before.

The opinion of the court is very brief but pointed. After citing the act of Congress the learned judge said: " According to the provisions of this law there must be not only the

commission of the crime, but the person charged must be a fugitive from the State in which it was committed before the executive authority can be called into action. Jackson was not a fugitive. He had not in all his life been in Tennessee; had never fled from it; and his case did not fall within the positive terms of this law. The oath of the detective was false, and the governors of the two States imposed upon. The whole proceeding was a fraud upon the law. If this arrest and imprisonment are to be maintained the opportunities for wrong and abuse of law will be great and widespread. Commercial transactions are largely conducted by mail and by telegraph. If the seller at one end of the line and the buyer at the other, with the aid of detectives, in cases of dispute and controversy among them, are to be allowed, under such proceedings as these, to have the citizens of one State carried to another State for trial under the allegation that the person charged has fled, instances of opposition may not be few."

It would be quite difficult to point out any material distinction between that case and the one at bar. It is quite clear that should we send the relator to Tennessee he would be entitled there to his discharge by the same court that discharged Jackson on the facts now before us. That court held that the accused party could not be deprived of his liberty by executive action based upon the false affidavit of a detective that he had fled from Tennessee to Illinois. That, in my opinion, is a safe precedent to follow in this case. Some one in this case has made just such an affidavit. That must follow from the admission that the relator was not in the demanding State at the times stated in the indictment as the dates when the alleged crimes were committed. On the hearing in this case upon the return of the writ, the State of Tennessee could have shown all the facts and circumstances of the alleged crime for which it had demanded the surrender to it of the person of the relator, as this State did in the Roberts case (*supra*). But instead of taking that course, all the facts and circumstances are left

clouded in mystery, except so far as they are disclosed by the admissions referred to. When it admitted that the relator was not in the State at the times laid in the indictment, and gave no other light as to the facts, the case for detention failed. The State of Tennessee does not ask for the surrender of the relator on the ground that he committed any crime in that State on the 2d day of July, 1901, nor does it even suggest that its prosecuting officer made any mistake in stating the 24th of June as the true date of the commission of the offense. The relator is claiming the benefit and protection of the laws of this State which guarantee to him his liberty against all unlawful restraint. If he has actually fled from the justice of the demanding State, of course he ought to be surrendered; but it is admitted that he did not, and it is safe to say that no one believes for a moment that he did except, possibly, in the same way and in the same sense that Jackson fled from the same State in the case cited. Personal liberty must rest in this State upon a very frail and unsafe basis if this court can be induced to send the relator to Tennessee upon such a vague and fanciful conjecture as that which is at the foundation of the fiction that he may in fact have committed the crime on the 2d of July, and that the prior dates stated by the prosecuting officer of that State are the result of some error or mistake. When the State of Tennessee, or some one authorized to speak for it, is willing to assure us that the suggestion is based upon fact and not upon fiction, it will be timely then to entertain it, but until then the courts of this State should treat its solemn admission upon the record according to its fair scope and meaning, which obviously is that the relator was not in the State when the crimes charged were committed. I am in favor of reversing the order.

HAIGHT, J. (dissenting): The relator was arrested by the respondent and held in custody by virtue of a warrant issued by the governor of the State of New York, in which the respondent was required to arrest the relator and deliver him

into the custody of one Vernon Sharp, to be taken back to the State of Tennessee, from which he had fled, pursuant to a requisition of the governor of that State. The warrant recites the following facts as having been established before the governor of this State. " It having been represented to me by the governor of the State of Tennessee that Charles E. Corkran stands charged in that State with having committed therein, in the county of Davidson, the crimes of larceny and false pretences, which the said governor certifies to be crimes under the laws of the said State, and that the said Chas. E. Corkran has fled therefrom and taken refuge in the State of New York; and the said governor of the State of Tennessee having, pursuant to the constitution and laws of the United States, demanded of me that I cause the said Chas. E. Corkran to be arrested and delivered to Vernon Sharp, who is duly authorized to receive him into his custody and convey him back to the said State of Tennessee, which said demand is accompanied by copies of indictments, and other indictments, duly certified by the said governor of the State of Tennessee to be authentic and duly authenticated, and charging the said Chas. E. Corkran with having committed said crimes and fled from the said State and taken refuge in the State of New York."

Corkran procured a writ of habeas corpus to issue for the purpose of obtaining his discharge. On the return of the writ, the attorneys for the parties stipulated " that three indictments were attached to the requisition papers, sent by the governor of the State of Tennessee to the governor of the State of New York, for the extradition of Chas. E. Corkran, that each of said indictments was found on the 26th day of February, 1902, and that the alleged crimes were charged in said indictments to have been committed on the 1st day of May, 1901, on the 8th day of May, 1901, and on the 24th day of June, 1901, respectively." It was further conceded by counsel of the respective parties " that the relator was not within the State of Tennessee between the 1st day of May, 1899, and the

1st day of July, 1901." It was also conceded that the relator
" was in the State of Tennessee on the 2d day of July, 1901."
Taking the two stipulations together, it appears that the
relator was not in the State of Tennessee on the dates charged
in the indictment, but that he was in that State eight days
after the date charged in the last indictment. In no place is
it stipulated that he was not in the State at the time the offenses
charged were committed. If this was an accidental omission,
it has not been supplied by any of the evidence before us. The
relator subscribed and verified the petition upon which the
writ of habeas corpus was issued. In it he alleges " that it
did not appear that there was any evidence before the governor
of the State of Tennessee at the time he issued his demand
that your petitioner was personally or constructively within
the limits of the State of Tennessee when the crimes are alleged
to have been committed." In his affidavit traversing the re-
turn to the writ he states that he had read the indictments be-
fore the governor of the State of New York upon which his
warrant of arrest was issued and that those indictments charged
him with the commission of the crimes of larceny and false
pretenses, specifying the dates named in the indictments. He
then states that he was not in the State of Tennessee at any
time during the months of March, April, May or June, 1901.
He also was sworn upon the hearing and gave oral testimony,
in which he reiterates that he was not in the State of Tennessee
during the dates mentioned in the indictments, but concedes
that he was there on the 2d day of July, 1901. In neither the
petition, affidavit or testimony does he swear that he was not in
the State when the offenses charged were committed, but has
refrained from so testifying.

There are cases in which time is a necessary ingredient of
the offense, as, for instance, the violation of the Sunday laws;
but, barring a few exceptions, I do not understand that the
precise time is a necessary ingredient of crimes, either under
our Code or the common law. Section 280 of our Code of

Criminal Procedure provides that " the precise time at which the crime was committed need not be stated in the indictment; but it may be alleged to have been committed at any time before the finding thereof, except where the time is a material ingredient in the crime." This provision of the Code is a substantial enactment of the common law upon the subject. (2 Hawk. P. C., 2 Ch. 46; 1 Hale P. C. 361; 1 Arch. Crim. Pr. 85; Com. v. Harrington, 3 Pick. 26; People v. Stocking, 50 Barb. 573; Regina v. Firth, 11 Cox C. C. 234; People v. Emerson, 25 N. Y. S. R. 466; People v. Jackson, 111 N. Y. 362-369.)

As we have seen, the last indictment charged the crime as having been committed on the 24th day of June. Time is not a material ingredient of the crimes of larceny or false pretenses; it would, therefore, have been competent upon the trial to show that the offenses charged were actually committed on the 2d day of July, when the relator was in the State, instead of the 24th day of June. The indictments were before the governor; they charged the commission of the crime of larceny. The usual allegation is that he did then and there take, steal and carry away, which imports the presence of the person charged. Under the statute a charge may be established before the governor by the production of a copy of the indictment. It, therefore, furnishes some evidence upon which the governor may act. As we have seen, the relator has neglected to show, either by stipulation or by his own testimony, that he was not actually present at the time the offenses charged were committed. He has confined his testimony to showing that he was not there on the particular dates specified in the indictment. This is not sufficient. It consequently follows that the contention of the relator to the effect that the governor had no power to issue the warrant for his arrest and his return to the State of Tennessee for the reason that he was not personally present in that State when the offense was committed is not raised by the record in these proceedings.

The warrant upon which the relator is detained recites all the facts necessary to give the governor jurisdiction to issue it. It is not contended that it is informal or defective in any particular. It recites that the governor of Tennessee presented papers to the governor of this State, duly authenticated, including copies of the indictments found, charging the relator with having committed the crimes of larceny and false pretenses in that State, and that he "has fled therefrom and taken refuge in the State of New York." This, if true, is sufficient to authorize the governor of this State to issue the warrant for his arrest and return to the State of Tennessee. The papers presented to the governor, upon which he made his determination to issue the warrant, have not been returned or their contents made to appear by the relator, either in his petition or traverse. They, consequently, are not before us, and we are unable to determine whether the conclusion of the governor was proper or without support of evidence.

In the case of People ex rel. Draper v. Pinkerton (77 N. Y. 245) the question under consideration appears to have been squarely decided. It is stated in the opinion that "the only material question which seems to be presented in this case is whether a warrant of the governor of this State for the arrest of a fugitive from justice of another State containing the recitals of facts necessary to confer authority under the constitution and laws of the United States is a sufficient justification for holding the prisoner when up on habeas corpus, without producing the papers or evidence upon which the governor acted. We have no doubt but that the recitals are to be taken as *prima facie,* at least, true, and that the return setting forth the warrant containing such recital is sufficient."

In the case of People ex rel. Jourdan v. Donohue (84 N. Y. 438), FINCH, J., in delivering the opinion of the court, says: "The sufficiency of the executive warrant to justify the detention of the prisoner is the sole question raised by the writ of habeas corpus, and presented on this appeal. . . .

Where, however, the papers upon which the warrant is founded are not produced, but are withheld by the executive in the exercise of his official discretion and authority, we can look only to the warrant itself and its recitals for the evidence that the essential conditions of its issue have been fulfilled." He then proceeds to state that all the essential requirements of the constitution and statute are contained in the recitals of the warrant, and concludes by affirming the order dismissing the writ of habeas corpus.

In the very recent case of Terlinden v. Ames (184 U. S. 270-278) Chief Justice FULLER says:   " The settled rule is that the writ of habeas corpus cannot perform the office of a writ of error, and that, in extradition proceedings, if the committing magistrate has jurisdiction of the subject-matter and of the accused, and the offense charged is within the terms of the treaty of extradition, and the magistrate, in arriving at a decision to hold the accused, has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused for the purposes of extradition, such decision cannot be reviewed on habeas corpus.   (Ornelas v. Ruiz, 161 U. S. 502-508, and cases cited ; Bryant v. United States, 167 U. S. 104.)" And again, he concludes by saying:   " The decisions of the executive department in matters of extradition within its own sphere, and in accordance with the constitution, are not open to judicial revision; and it results that where proceedings for extradition, regularly and constitutionally taken under the acts of Congress, are pending, they cannot be put an end to by writs of habeas corpus."   (See, also, Matter of Clark, 9 Wend. 212.)

In the case of Roberts v. Reilly (116 U. S. 80) we have a case in many respects very similar to the one under consideration.   In that case the relator had been indicted in the State of New York for grand larceny.   A requisition was made by the governor for his extradition from the State of Georgia.

The governor of that State issued his warrant upon which he was arrested and held in custody. Habeas corpus was then issued by the District Court of the Southern District of Georgia. The accused made an affidavit denying his guilt, and also denying that he was in the State of New York on the day laid in the indictment as the date of the offense; but he did not deny that he was in the State at about that date.

Mr. Justice MATTHEWS, in delivering the opinion of the court, says with reference to the claim that the relator was not a fugitive from justice, " that it is a question of fact which the governor of the State, upon whom the demand is made, must decide, upon such evidence as he may deem satisfactory. . . . The determination of the fact by the executive of the State in issuing his warrant of arrest upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof." The judgment of the Circuit Court, remanding the prisoner to the custody of the agent of the State of New York, was affirmed. It will be observed that in that case the relator showed that he was not in the State at the date laid in the indictment; but this did not overcome the presumption of fact found by the governor, that he was a fugitive from justice.

Article 4, section 2, subdivision 2 of the constitution of the United States provides that " a person charged in any State with treason, felony or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime."

The Revised Statutes of the United States, section 5278, provides that " whenever the executive authority of any State or territory demands any person as a fugitive from justice of the executive authority of any State or territory to which such person has fled, and produces a copy of an indictment found,

or of an affidavit made before a magistrate of any State or territory, charging the person demanded of having committed treason, felony, or other crime, certified as authentic by the governor or chief of police of the State or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or territory to which such person has fled to cause him to be arrested and secured, and to cause a notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive and to cause him to be delivered to such agent when he shall appear."

It will be observed that under the constitution and statute, to which we have referred, the application must be made to the "executive authority" of the State or territory to which the person charged with the crime has fled.   The duty, therefore, devolves upon such executive authority to determine all the questions of fact which arise under the constitution and statute. In this State the executive authority is vested in the governor. When the application was made for the arrest of the relator by the governor of Tennessee it became the duty of the governor of this State to determine:   (1) Whether a crime under the laws of Tennessee was charged as having been committed by the relator.   (2) Whether he was a fugitive from justice of that State.   It appears that the governor has determined these questions from his recitals in the warrant.   The first question was established by the production before him of the indictments found duly certified and authenticated, and the second by the indictments and other documents duly certified by the governor of the State of Tennessee to be authentic. Neither the constitution nor the statutes make any provision for a review of the determination of the governor, but our own statutes give to every person deprived of his liberty the right to apply for a writ of habeas corpus, and in case he is imprisoned by virtue of a warrant of the executive, under a demand for extradition, section 827 of the Code of Criminal Procedure gives him the right to a review for the purpose of

determining his identity, whether he is the person charged with crime under the demand for extradition. Under this writ the courts doubtless have the power to determine whether the executive has acted within the powers given him by the constitution and statutes of the United States. When the papers upon which he has acted have been returned and become a part of the record in the proceedings upon habeas corpus, and it appears from such papers that no crime is charged as having been committed in the State demanding the return of the person, it has been held, though not without criticism, that the court may discharge him (People ex rel. Lawrence v. Brady, 56 N. Y. 182), but where the papers upon which the governor has acted in making his determination to issue the warrant are not before the court, and the contents of such papers do not appear, the recitals of facts found by him, contained in the warrant, must be taken as true, so far as the review by habeas corpus is concerned.

The prevalence of crime committed in one State by persons actually in another State, through innocent agents employed by them, such as the forwarding of forged drafts, checks and other instruments through the mails, express agencies or otherwise, for the purpose of procuring money or other property thereon, makes it desirable that the question should be determined as to whether, under the constitution and statute of the United States, a person found in one State can be surrendered up, to be taken to another State for trial, for a crime committed therein, through some innocent agency of his, when he was only constructively present in the person of his agent. That question, however, ought to be determined by the Supreme Court of the United States. The conclusions reached upon the points above discussed render it unnecessary for this court to determine it in this case.

The order appealed from should be affirmed.

PARKER, Ch. J., GRAY and VANN, JJ., concur with CULLEN and O'BRIEN, JJ.; WERNER, J., concurs with HAIGHT, J.

Ordered accordingly.