THE PEOPLE, ex rel. JOHN JOURDAN, Plaintiff in Error, *v.*
CHARLES DONOHUE, Justice, etc., Defendant in Error.

The provision of the Federal Constitution (art. 4, § 2), requiring the sur-
render, on demand of the executive authority of a State, of fugitives from
justice " charged with treason, felony or other crimes " who are found
in another State, and the provision of the U. S. Statutes giving practical
effect thereto (U. S. R. S., 5278), embrace every criminal offense and
every act forbidden and made punishable by the law of the State where
the act was committed.

Where the papers upon which a warrant of extradition is issued are with-
held by the executive, the warrant itself can only be looked to for the
evidence that the essential conditions of its issue have been complied
with, and it is sufficient if it recites what the law requires.

Both at common law and under the statutes of Connecticut, "theft " is
recognized as a crime and as synonymous with "larceny."

Where therefore, to a writ of *habeas corpus*, a warrant of extradition issued by
the governor of this State was alone returned, which recited a represen-
tation by the governor of Connecticut, that the prisoner stood " charged
with the crime of theft " committed in said State, that said governor has
demanded his arrest and extradition, that the demand was accompanied
by affidavits, etc., whereby the prisoner " is charged with said crime
and with having fled from the said State," and that such papers were
certified by said governor to be duly authenticated, *held*, that the war-
rant fully complied with the statute and sufficiently established the con-
ditions necessary to its issue ; that it was not necessary to state therein
the facts constituting the alleged crime.

(Argued February 28, 1881 ; decided March 8, 1881.)

ERROR to the General Term of the Supreme Court, in the
first judicial department, to review an order made December
12, 1880, affirming an order of Hon. CHARLES DONOHUE, jus-
tice of the Supreme Court, which dismissed a writ of *habeas
corpus* issued on behalf of James Jourdan, the relator, and re-
manded him to custody ; which order was brought up for review
at General Term by writ of *certiorari ;* the order appealed
from dismissed said writ.

The relator was in the custody of an agent of the State of
Connecticut, who made return to the writ of *habeas corpus*, in
substance, that he detained the relator under a warrant issued

by the governor of this State, of the body of which the following is a copy.

·' Whereas it has been represented to me by the governor of the State of Connecticut that John Jourdan stands charged with the crime of theft, committed in the county of Middlesex, in said State, and that he has fled from justice in that State, and has taken refuge in the State of New York; and the said governor of Connecticut having, in pursuance of the Constitution and laws of the United States, demanded of me that I shall cause the said John Jourdan to be arrested and delivered to Walter P. Chamberlin and Lyman Smith, who are duly authorized to receive him into their custody and convey him back to the said State of Connecticut.

" And whereas, the said representation and demand is accompanied by affidavits, complaint and warrant, whereby the said John Jourdan is charged with the said crime, and with having fled from the said State, and taken refuge in the State of New York, which are certified by the said governor of Connecticut to be duly authenticated.

" You are, therefore, required to arrest and secure the said John Jourdan whenever he may be found within the State, and to deliver him into the custody of the said Walter P. Chamberlin and Lyman Smith, to be taken back to the said State from which he fled, pursuant to the said requisition."

The relator traversed the return. It appeared that the governor refused to furnish the papers upon which his warrant was issued.

Further facts appear in the opinion.

*Ira Shafer* for appellant. From the executive warrant and the papers annexed hereto — either affidavits or an indictment — must be determined the question whether the detention of the plaintiff in error is lawful. (*The People* v. *Pinkerton*, 17 Hun, 199; affirmed, 77 N. Y. 245.) In case no papers accompany the executive warrant, the question of the legality of the detention of the plaintiff in error must depend upon the war-

rant and the recitals therein. (*People* v. *Pinkerton*, 17 Hun, 199; 77 N. Y. 245.)  It is not enough to charge a crime; the time, place and nature of the crime and its subject-matter should be set out.  (3 Whart. Cr. Law, § 2972; *Matter of Francois Farez*, 7 Blatchf. 35; *Matter of Leland*, 7 Abb. [N. S.] 61, 65, 66; *Ex parte Smith*, 3 McLean, 121; *People* v. *Pinkerton*, 17 Hun, 199, 200, 201; 2 Bouv. L. D., Warrant; *People* v. *Brady*, 56 N. Y. 182, 190, 191; 2 Hale, 122; 2 Inst. 592; 1 Ld. Raym. 213.)  The governor has no general power or authority to issue his warrant for the arrest of citizens of this State in order that they may be sent out of it; he is an officer of limited jurisdiction in this respect, and in the absence of the affidavit or indictment the warrant must recite sufficient to show authority to issue it.  (*Ex parte Smith*, 3 McLean, 121; *Solomon's Case*, 1 Abb. Pr. [N. S.] 347; *People* v. *Pinkerton*, 17 Hun, 199, 201.)

*Samuel A. Noyes* for respondent.  The recitals of the warrant of the executive of this State show the existence of every requirement of the Constitution, statutes and acts of Congress affecting the surrender of the relator.  (*Matter of Clark*, 9 Wend. 212; *Connors* v. *Reilley*, 11 Hun, 89; *People, etc.*, v. *Pinkerton*, 17 id. 199; 77 N. Y. 245; *People ex rel. Lawrence* v. *Brady*, 56 id. 182.)  The executive warrant, in describing the offense for which the relator is sought to be extradited as "theft," describes an offense which comes under the statutes of 1793, providing for the extradition of fugitives charged with treason, felony or other crimes.  (U. S. Const., art. 4, § 2; U. S. R. S., p. 1027, § 5278; *People* v. *Brady*, 56 N. Y. 188; *Comm. of Kentucky* v. *Denison*, 24 How. [U. S.] 66, 99; 4 Bla. Com. 229; *Am. Ins. Co.* v. *Bryan*, 26 Wend. 563–586; act of 1873, chap. 357; rev. of 1875 of Gen. Stat. of Conn., 537–538, 502, 503.)  The court will presume that the proper facts are properly stated in the proper papers which were before the governor when he issued the warrant.  (*Matter of Clark*, 9 Wend. 223; 77 N. Y. 245.)

FINCH, J. The sufficiency of the Executive warrant to justify the detention of the prisoner is the sole question raised by the writ of *habeas corpus*, and presented on this appeal. The warrant alone is returned, and, of necessity, furnishes the only authority upon which the proceedings for extradition can rest. These proceedings, as between the several States of the Union, expressly commanded by the Federal Constitution, were regulated and given a practical operation by the act of 1793. (Const., art. 4, § 2; U. S. R. S., § 5278.) They provide for the surrender of persons "charged with treason, felony, or other crimes." The language chosen is broad, and was plainly intended to embrace every criminal offense, and every act forbidden and made punishable by the law of the State where the crime was committed, and whether such by the common law, or express legislative enactment. (*Kentucky* v. *Dennison*, 24 How. [U. S.] 66.) By the act of 1793, three things are rendered necessary to precede and justify the warrant of extradition. There must be a demand from the governor of the State within which the crime has been committed for the surrender of the fugitive who has fled from its jurisdiction. Such requisition must be accompanied by an indictment, or an affidavit charging the commission of the offense. And such indictment or affidavit must be authenticated by the certificate of the Executive making the requisition. These preliminary conditions are essential. To say they are not would be to disregard the law, and make the Executive an autocrat. If they are essential, their presence or absence in a given case must, of necessity, become the subject of judicial investigation when the judgment of the law is invoked. And hence we have held that where the preliminary papers upon which a warrant of extradition has been granted are produced, and are before us, it is our right and our duty to examine them, and judge and determine, when our process is invoked, whether they are sufficient, under the law, to justify the warrant of extradition. (*People ex rel. Lawrence* v. *Brady*, 56 N. Y. 182.) Our ruling in this respect has not escaped criticism (*Leary's Case*, 6 Abb. N. C. 44); but an opposite conclusion, which would

make the determination of the Executive final, even though the papers produced clearly showed that the essential preliminaries of the law were unfulfilled, does not yet commend itself to our judgment.

Where, however, the papers upon which the warrant is founded are not produced, but are withheld by the Executive, in the exercise of official discretion and authority, we can look, only to the warrant itself, and its recitals, for the evidence that the essential conditions of its issue have been fulfilled. (*People ex rel. Draper* v. *Pinkerton*, 77 N. Y. 245.) That is the situation of the present case. The warrant recites a representation by the governor of Connecticut, that "John Jourdan stands charged with the crime of theft, committed in the county of Middlesex, in said State;" that the governor of Connecticut has demanded his arrest and extradition; that such representation and demand were accompanied "by affidavits, complaint and warrant, whereby the said John Jourdan is charged with the said crime, and with having fled from the said State;" and that such papers are "certified by the said governor of Connecticut to be duly authenticated." These recitals cover the essential conditions of the law, and establish their existence, unless there is force in the two objections presented for our consideration, and which were argued at least with earnestness and ability.

It is at first questioned whether "theft" is a crime either at common law or under the statutes of Connecticut. The criticism is upon the word. It is claimed not to be the precise equivalent of "larceny," and not to be defined as a crime by the statutes of Connecticut. We do not think either suggestion is well founded. Bouvier defines "theft" as "a popular term for larceny." Blackstone uses the two words synonymously and as descriptive of one and the same offense. He defines "larceny or theft." (Vol. 4, p. 229.) He proceeds to "examine the nature of theft or larceny." (Id. 230.) He speaks of a "prosecution for theft." (Id. 235.) And while discussing the punishment of larceny relates that "our antient Saxon laws punished theft with death if above the value of

twelve pence." (Id. 237.) In *American Ins. Co.* v. *Bryan* (26 Wend. 563), the meaning of the words " thieves " and " theft " came under discussion, and it was said of the latter that its " primary meaning, which is now the ordinary one, is that of secret stealing, or simple larceny." The statutes of Connecticut equally recognize theft as a crime. Thus it is provided that " when *theft*, shall be committed in one county and the property *stolen* shall be carried into another county, the offender may be tried in either county." (Conn. Gen. Stat. 527, 538.) And burglary is defined to be a breaking and entering " with intent to commit *theft*," etc. (Id. 503.) It is quite evident that, both at common law and under the statutes of Connecticut, theft is recognized as a crime, and is synonymous with larceny, and the recital in the Executive warrant, that Jourdan was charged with theft is quite as effectual as if it had described him as charged with larceny.

But the force of the argument of the learned counsel for the prisoner was not spent on this merely verbal criticism, and took the graver form that the warrant recited, not the facts constituting the offense, but simply the conclusions of the Executive, which might or might not be well founded and accurate, and that such facts should be stated at least with reasonable certainty and precision. The objection involves, as its ultimate result, a requirement that the Executive warrant shall state with reasonable certainty the facts constituting the alleged crime, and that, without such facts, a recital that the person demanded is charged with a crime described simply by its generic name, as murder, larceny or the like, is insufficient. There are several difficulties in the way of such a conclusion. The proceeding is under a specific statute. Compliance with that is all that is necessary. The question is never whether the prisoner is guilty or innocent, whether a crime has been committed or not. Those are later questions, as to which the party arrested, in due season, will have full opportunity to be heard. The question is simply whether he is " charged with crime." The recital in the warrant avers that fact. We must take it as true and cannot require more. If it be said that the state-

ment of the fact involves, more or less, a conclusion of the Executive, derived from other facts, it must not be forgotten that it is at least a conclusion drawn by the officer to whom the law primarily committed the question. Nor should we fail to observe that the doctrine contended for sets strongly toward an effort to break in upon, and break down, the independent action of the Executive in the performance of official duty. In this case, as in many others, the warrant only is produced, and the papers on which it is founded are withheld. We are to assume that they are withheld in what seems to the Executive the proper performance of official duty. But if the facts contained in the papers must be recited in the warrant, the right or duty, if it exists in the particular case, to withhold such papers is rendered nugatory and vain. The statute contemplated no such purpose. We ought not to be led in that direction. It is enough that the warrant recites what the law requires. We cannot add to it new conditions. The argument founded upon the characteristics of ordinary criminal warrants for the apprehension of persons accused, and of indictments for specific crimes, has no application to the Executive warrant in cases of extradition. At common law it was not necessary, in a criminal warrant for the arrest of the offender, to recite the accusation. (1 Chit. Crim. Law, 41 ; 1 Archb. Crim. Pl. 107, note 1; *Atchinson* v. *Spencer,* 9 Wend. 62; *People* v. *McLeod,* 1 Hill, 398, note *e.*) That was made necessary, in this State, by the statute prescribing the duties and powers of criminal magistrates. (2 R. S., part 4, chap. 2, tit. 2, § 3.) It had no reference to an Executive warrant. Nothing in its inherent nature or the purpose which it subserves requires that it should do more than show, by an explicit statement, that the person arrested is charged with a crime committed in the demanding State. To an ordinary criminal warrant the person arrested is sometimes required to plead. (2 R. S., part 4, chap. 2, tit. 3, § 7.) To an indictment he is always required to plead. In such cases the accusation must be stated with varying degrees of precision. The Executive warrant is of a totally different character. It merely remands an accused person to the juris-

diction from which he fled, leaving him there with every right of defense perfect and unimpaired, and no humane or just provision for his protection invaded. We can see no reason why the warrant of the Executive should be required to go beyond a substantial statement of the existence of the conditions necessary to its issue. It was so held in an early case (*In re Clark*, 9 Wend. 222), and which, we think, may be wisely followed. We are of opinion that the Executive warrant, in the present case, fully complied with the statute and sufficiently established the conditions necessary to its issue.

The order appealed from should be affirmed.

All concur, except RAPALLO, J., absent.

Order affirmed.