## DIZE *v.* LLOYD *et al.*

*(Circuit Court, D. Maryland. November 21, 1888.)*

1. FISHERIES — OYSTER DREDGING — LICENSE — CONSTITUTIONAL LAW — TONNAGE DUTY.

> The Maryland oyster law of 1886, c. 296, exacting a license fee of three dollars per ton for every vessel employed in dredging for oysters in the waters of the state, *held* not a tonnage tax, but a lawful compensation, demanded by the state as the proprietor of the oyster-beds for the privilege of taking the oysters, which it is reasonable to rate according to the size of the vessel used.

**2. Same.**

A section of the law enacts that having instruments for oyster dredging on board any vessel within the state, without having first obtained a dredging license, shall be *prima facie* evidence of an intention to use the vessel contrary to the law. *Held,* that this was a reasonable provision, required for the proper enforcement of the law, and was not a regulation of commerce, nor a prohibited interference with the freedom of navigation.

*(Syllabus by the Court.)*

At Law.    Action for trespass.

*T. S. Hodson* and *Johnson & Johnson*, for plaintiff.

*William Pinkney Whyte*, Atty. Gen., for defendants.

Before BOND and MORRIS, JJ.

MORRIS, J.    This is an action of trespass brought against certain officers of the state of Maryland composing the board of public works and the state fishery force, for seizing an oyster vessel belonging to the plaintiff.    The plaintiff alleges that his vessel was duly enrolled and licensed under the laws of the United States, and was engaged in navigating the Chesapeake bay, when she was seized by orders from the defendants in the enforcement of the provisions of an act of the general assembly of Maryland, approved April 7, 1886, c. 296, which law the plaintiff asserts is contrary to the constitution of the United States, and void, in that it exacts a duty upon tonnage, and also attempts unlawfully to regulate commerce.    The question of the constitutionality of the law is raised by a demurrer to the defendant's plea alleging the plaintiff's non-compliance with the act of 1886, c. 296, and setting up as a justification of the trespass the provisions of that law, making it their duty to arrest all persons, and to seize all boats violating its provisions.    Similar questions were before us in the *Case of Insley*, 33 Fed. Rep. 680, and in the case of *Booth* v. *Lloyd*, Id. 593.    In those cases it was held that the act of 1884, c. 518, which exacted a license fee of three dollars per ton for every vessel engaged in buying, selling, or carrying oysters in the waters of Maryland, was an attempt to exact a tonnage tax within the prohibition of the federal constitution; and we also held that, as that law provided that no such license should be granted to any but persons who had been for twelve months residents of Maryland, it was an unconstitutional discrimination against non-residents of Maryland, in denying them the right to buy, sell, or carry an article of merchandise. We are unable to see that the law of 1886, c. 296, which is now invoked, is open to any such objection.    It provides that no boat shall be used in catching oysters in any of the waters of Maryland, in which taking oysters is by law permitted, unless the owner has been a resident of the state for twelve months, and unless he shall pay to the state at the rate of three dollars per ton of the boat's measurement for the privilege of dredging for the whole season from the 15th of October to the 1st of April, or at the rate of fifty cents per ton per month for the remainder of the season, if the license is issued after the season has begun.    The supreme court of the United States has put it beyond debate in the cases of *Smith* v. *Maryland*, 18 How. 71, and *McCready* v. *Virginia*, 94 U. S. 391, that

the state is the owner of the oyster-beds in its waters, and can rightfully prohibit the taking of oysters from them by any but its own citizens, and can regulate the times, instruments, and conditions for taking them, and make valid laws for the seizure and forfeiture in her own courts of any vessel, although enrolled and licensed under the laws of the United States, if such vessel be the instrument used in the violation of such laws. It is not to be questioned, also, that, as a condition of permitting her own citizens to take the oysters, she may exact such compensation from them as the legislature may decide.

The sole contention, as we understand it, upon this branch of the present case is that, because the amount of the compensation exacted by the state is measured and determined by the tonnage of the boat used in dredging, it is thereby converted from a constitutional exaction for a special privilege into an unconstitutional tonnage tax on vessels. We are not able to see that this contention is in accordance with either reason or authority. It is the substance we are to consider, and not merely the name. If the exaction is in reality but a price paid to the state for the oysters, gauged by the capacity of the instrument employed in taking them, then the fact that the instrument is an enrolled and licensed vessel of the United States cannot convert the compensation so exacted into a tonnage tax. While engaged in dredging, the vessel is not engaged in commerce, but is an instrument for catching oysters; and, as the oysters are the property of the state, and she may lawfully exact payment for them, there is nothing more reasonable than that the exaction should be proportioned to the capacity of the vessel. It has nothing to do with commerce or navigation, and cannot be said to be a tax upon either. It was pointed out by the supreme court in *Packet Co.* v. *Keokuk*, 95 U. S. 80, that a charge by a state or city, although regulated according to the tonnage of a vessel, did not make it a tonnage tax, provided it was in reality a compensation for a special benefit conferred, which it was reasonable to estimate by that standard. The court said:

"When compensation is demanded for the use of a wharf, the demand is an assertion, not of sovereignty, but of a right of property. * * * No one would claim that a demand for the use of a dry dock for repairing a vessel, or a demand for towage in a harbor, would be a demand of a tonnage tax, no matter whether the dock was the property of a private individual or of a state, and no matter whether proportioned or not to the size or tonnage of the vessel."

And, in *Transportation Co.* v. *Parkersburg*, 107 U. S. 699, 2 Sup. Ct. Rep. 732, speaking of a charge by a city for wharfage, the supreme court again said:

"It is obvious that the mode of rating the charge, * * * whether according to the size or capacity of the vessel or otherwise, has nothing to do with its essential nature."

In *Packet Co.* v. *Catlettsburg*, 105 U. S. 561, the court said:

"If, however, the trustees of the town had a right to compensation for the use of the improved landing or wharf which they had made, it is no objection to the ordinance fixing the amount of this compensation that it was measured by the size of the vessel, and that its size was ascertained by the tonnage of

each vessel. It is idle, after the decisions we have made, to call this a tax upon tonnage."

It appears, therefore, most clearly that it is no objection to the Maryland oyster law of 1886 that it adopts the tonnage of the vessel employed in dredging as the most reasonable and convenient standard by which to determine the rate of charge to be made for the privilege of taking the oysters which are the property of the state.

The other objection urged against the constitutionality of the law is directed against the provisions for its enforcement. By section 4 it is enacted that it shall not be lawful, prior to obtaining a license, to affix any crank, winder, or other machinery for operating scoops, scrapes, or dredges, or to have them on board with intent to affix them to any vessel in this state, for use in taking or catching oysters; and that the fact of having such implements on board shall be *prima facie* evidence of intent to use them contrary to law. The reasonable intendment of this section is that it shall not be lawful, before obtaining an oyster-dredging license, to have the implements for dredging on board any vessel in this state with intent to use them for taking oysters; and the having them on board without such a license shall be *prima facie* evidence of the intent to use them. The right of a state to exact a license to dredge in the waters of the state being conceded, the only question is whether this is a reasonable provision for the enforcement of that right, or is it an encroachment upon the exclusive power of congress to regulate commerce with foreign nations, and among the several states, or does it interfere with the freedom of such commerce? It is urged that under this section an oyster vessel of Virginia navigating the Chesapeake might be seized simply because she had dredging implements on board, and have her voyage interrupted and her owners subjected to the expense of proving her innocence. This is a possible case, but it is to be considered that no law can be enforced without the possibility of hardship to some unjustly suspected person. Similar provisions enacting that certain facts shall be *prima facie* evidence of intention or guilt are found in many penal statutes, and particularly those for the protection of game, fish, or oysters. There is nothing unusual, unnecessary, or unreasonable in such an enactment. To require the court to declare such a provision an unconstitutional interference with the freedom of interstate commerce, it should be clearly established that the law must result in such unjustifiable interference, not that by possibility it might so result. In our judgment the demurrer should be overruled.

BOND, J., concurred.