## COURT OF APPEALS.

### June 14, 1907.

# THE PEOPLE EX REL., ABRAHAM KOPEL v. THEODORE A. BINGHAM, POLICE COMMISSIONER, ETC.

(189 N. Y. 124.)

(1). REQUISITION—POWERS OF GOVERNOR OF PORTO RICO.

Although Porto Rico is not a territory of the United States within the revenue clauses of the Constitution, it possesses most of the attributes of a territory, and the governor thereof has the same power as that possessed by the governor of any organized territory to issue a requisition for the return of a fugitive criminal, since the act of Congress organizing its government (31 U. S. Stat. at Large, 77 *et seq.*) provides (p. 80, § 14) that "the statutory laws of the United States not locally inapplicable * * * shall have the same force and effect in Porto Rico as in the United States," and (p. 80, § 17) that the governor "shall at all times faithfully execute the laws, and he shall in that behalf have all the powers of the governors of the territories of the United States that are not locally inapplicable," and one of the powers of governors of such territories is the authority to demand the rendition of fugitives from justice as provided in section 5278 of the United States Revised Statutes, and authorized by section 2 of article 4 of the United States Constitution.

(2). SAME—HABEAS CORPUS—WHEN PROPERLY DISMISSED.

Where, therefore, the governor of this state receives a duly authenticated demand from the governor of Porto Rico for the arrest and deliverance to his specified agent of a fugitive from justice, it is his duty to issue the executive warrant of arrest provided for in section 827 of the Code of Criminal Procedure; and a habeas corpus proceeding instituted to procure the fugitive's release from custody under this warrant, on the ground that the governor of Porto Rico, under the Constitution and laws of the United States, possesses no authority to demand the rendition of a fugitive from justice who is charged with an offense against the laws of that island and has fled into one of the states of the Union, is properly dismissed.

*People ex rel. Kopel v. Bingham*, 117 App. Div. 411, affirmed.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 12, 1906, which affirmed an order of Special Term overruling a demurrer to the return to a writ of habeas corpus and dismissing said writ.

The facts, so far as material, are stated in the opinion.

*Alfred R. Page* for appellant.   Extradition between states, territories and countries, subject to the jurisdiction of the United States, depends solely on the provisions of the Constitution of the United States and the acts of Congress.   (*People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176.)   This case does not come within any provision of law for extradition between Porto Rico and this state.   (U. S. Const. art. 4, § 2; U. S. R. S. §§ 5270, 5279, 5728; *Neely* v. *Henkel,* 180 U. S. 109; *Ex parte Lane,* 133 U. S. 447; *Ex parte Morgan,* 20 Fed. Rep. 305; *Dorr* v. *U. S.,* 195 U. S. 138; *Thompson* v. *Utah,* 170 U. S. 343; *Downes* v. *Bidwell,* 182 U. S. 244; *Goetz* v. *U. S.,* 103 Fed. Rep. 73.)   The acts of Congress relating to extradition cannot be extended by construction to apply to places other than those specified in the acts themselves.   (*Downes* v. *Bidwell,* 182 U. S. 244.)

*William Travers Jerome, District Attorney* (*Robert S. Johnstone* of counsel), for respondent.   Porto Rico is a "territory" of the United States within the meaning of the rendition statute.   (*Ortega* v. *Lara,* 202 U. S. 339; U. S. Const. art. 4, § 3, subd. 2; *Mormon Church* v. *U. S.,* 136 U. S. 1, 42–44; *De Lima* v. *Bidwell,* 182 U. S. 1; *Murphy* v. *Ramsey,* 114 U. S. 15; *Downes* v. *Bidwell,* 182 U. S. 244; *National Bank* v. *County of Yankton,* 101 U. S. 129; *Ex parte Morgan,* 20 Fed. Rep. 298; *Matter of Lane,* 135 U. S. 443.)   Even if Porto Rico is not technically a "territory" of the United States, there exists sufficient authority in the statutes to author-

ize the procedure adopted in this case for the extradition of the relator. (*Huus* v. *N. Y. & P. R. S. S. Co.*, 182 U. S. 392; *Gonzalez* v. *Williams*, 192 U. S. 1; *Ribas* v. *U. S.*, 194 U. S. 315; *Ex parte Reggel*, 114 U. S. 642; *Kentucky* v. *Dennison*, 65 U. S. 66.)

WILLARD BARTLETT, J.   The relator, Abraham Kopel, is restrained of his liberty by Theodore A. Bingham, police commissioner of the city of New York, under an executive warrant issued by the governor of this state pursuant to the provisions of section 827 of the Code of Criminal Procedure relative to the apprehension and rendition of fugitives from justice.   That warrant recites that it has been represented to the governor of the state of New York by the governor of Porto Rico that Abraham Kopel stands charged in that island with having committed therein in the district of Aquadilla the crime of embezzlement which the said governor certifies to be a crime under the laws of Porto Rico, and that the said Abraham Kopel has fled therefrom and taken refuge in the state of New York.   It further recites that the governor of Porto Rico pursuant to the Constitution and laws of the United States has demanded of the governor of the state of New York that he cause the said Abraham Kopel to be arrested and delivered to Samuel C. Bothwell, a person duly authorized to receieve him into his custody and to convey him back to Porto Rico.   The warrant thereupon requires the police commissioner to arrest and secure the said Abraham Kopel and after compliance with the requirements of section 827 of the Code of Criminal Procedure to deliver him into the custody of said Samuel C. Bothwell to be taken back to Porto Rico whence he fled.

The present habeas corpus proceeding was instituted in behalf of the relator to procure his release from custody under this warrant on the ground that the governor of Porto Rico under the Constitution and laws of the United States possesses

33

no authority to demand the rendition of a fugitive from justice who is charged with an offense against the laws of that island and has fled into one of the states of the Union. The writ was dismissed at Special Term where the relator's demurrer to the respondent's return was overruled; and the order made at Special Term has been affirmed by the Appellate Division where it was held that Porto Rico is a territory within the meaning of section 5278 of the Revised Statutes of the United States relative to interstate extradition, and also that whether Porto Rico be a territory or not the governor of that island is legally authorized to make a demand for the rendition of a fugitive from justice who has fled into one of the states, with which demand it is the duty of the state executive to comply.

Whatever authority belongs to the governor of the state of New York to issue a warrant for the apprehension of a fugitive from justice must be found in the provisions of the Constitution of the United States relative to such fugitives and in the statutes enacted in pursuance of those provisions. (*People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176; affd., *sub nomine Hyatt* v. *Corkran,* 188 U. S. 691.)

The Constitution of the United States (Art. IV, sec. 2, clause 2) provides as follows:

" A person charged in any state with treason, felony or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

In 1793 Congress gave effect to this provision by an act, the substance of which is still in force as section 5278 of the Revised Statutes of the United States, the material portion of which, so far as this proceeding is concerned, reads as follows:

"§ 5278. Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the

executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled, to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear."

Although the constitutional provision which has been quoted applies in terms only to fugitives from one state to another state, it has been deemed when considered in connection with the power of Congress over the territories (Const. U. S. art. IV, sec. 3, subd. 3) to authorize the imposition of like duties upon the executive of a territory. (*Ex parte Reggel,* 114 U. S. 643.)

The provisions of the Federal Constitution and the Revised Statutes of the United States to which I have referred have been recognized and acted upon by the legislature of New York in the enactment of the statute which now constitutes section 827 of the Code of Criminal Procedure under which the executive warrant in this case was issued.

It is clear that if the island of Porto Rico was an organized territory, in all respects and for all purposes possessing the same legal status, for example, as Arizona or New Mexico, or as Utah before Utah was admitted into the Union, there could be no question as to the power of the governor of New York to cause the arrest and surrender of a Porto Rican fugitive from justice. It is because the Supreme Court of the United States has refused to recognize Porto Rico as in all respects such a

territory that the governor's authority is disputed; the foundation of the relator's claim in this respect being the decision in *Downes* v. *Bidwell* (182 U. S. 244, 287) to the effect that while the island of Porto Rico is a territory appurtenant and belonging to the United States it is not a part of the United States within the revenue clauses of the Constitution.

Notwithstanding this judicial declaration I am of opinion that the governor of Porto Rico is authorized to make the demand for the rendition of a fugitive from justice provided for in section 5278 of the Revised Statutes of the United States and contemplated by section 827 of the Code of Criminal Procedure of New York, and that it is the duty of the governor of this state upon receiving such a demand from the governor of Porto Rico duly authenticated as required by law to cause such fugitive to be arrested and delivered to the agent authorized by the governor of Porto Rico to receive him.

While not a territory within the revenue clauses of the Constitution, Porto Rico possesses most of the attributes of the organized territories which have so long been a feature of our general government. It has been fully organized under an act of Congress prescribing many details of civil government in a scheme analogous to that provided for the territories within the continental boundaries of the United States. It has an executive, legislative and judicial system of its own. It is represented at tre seat of general government by a resident commissioner elected by its citizens, and its local legislative powers, like those of the organized territories, are made subject to the disapproval of the Congress of the United States. (See act approved April 12, 1900, 31 U. S. Statutes at Large, Page 77.) It is true that in this organic act Porto Rico is not denominated a territory, but it is perhaps worthy of note that in the general legislative, executive and judicial appropriation act of 1906, the appropriations for the salary of the resident commissioner from Porto Rico to the United States and his traveling expenses

appear under the title "Territory of Porto Rico." (U. S. Statutes at Large, 1st session, 59th Cong., part 1, page 417.) The organic act provides in section 14 that "the statutory laws of the United States not locally inapplicable except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Porto Rico as in the United States" except the internal revenue laws. (31 U. S. Statutes at Large, 80.) It is further provided in section 17 that the governor "shall at all times faithfully execute the laws and he shall in that behalf have all the powers of governors of the Territories of the United States that are not locally inapplicable." (31 U. S. Statutes at Large, 81.). One of the powers of governors of territories of the United States is the authority to demand the rendition of fugitives from justice under section 5278 of the Revised Statutes. This section of the organic act clearly confers that power upon the governor of Porto Rico unless it can be held that it is for some good and sufficient reason not locally applicable to the affairs of that island. I am unable to perceive any such reason, nor is any suggested in the brief of the able counsel representing the relator on this appeal. He merely argues that the provisions which I have quoted from sections 14 and 17 must refer only to the administration of the internal affairs of the island and that it was not the intention of Congress "to extend these relations growing out of interstate comity." But as was held by this court in *People ex rel. Corkran* v. *Hyatt* (*supra*) the exercise of the power of interstate rendition does not depend on comity at all, but upon the positive provisions of the written law. The constitutional power of Congress to enact the provisions to which reference has been made from sections 14 and 17 of the organic act under which Porto Rico is governed has not been questioned and I think that in order to give full effect to those provisions we must hold that the governor of Porto Rico has precisely the same power as that possessed by the governor of any organized territory to issue a requisition

for the return of a fugitive criminal. This was the conclusion reached by Judge Hough of the District Court of the United States for the Southern District of New York in passing upon a similar application by this same relator (*In re Kopel*, 148 Fed. Rep. 505) and the reasoning by which he reached that result seems to me sound and convincing.

I, therefore, advise an affirmance of the order under review.

CULLEN, CH. J., GRAY, EDWARD T. BARTLETT, HAIGHT, VANN and HISCOCK, J. J. concur.

Order affirmed.

## REQUISITION.

### RIGHT TO REQUISITION.

It is well understood that the right which a state has to demand from another state the delivery to its officers, of one who has committed some offense against the laws of that state and escaped within the borders of another state, is based upon the provisions of the United States Constitution. Sect. 2, Art. 4. U. S. Const. And not upon interstate comity. People v. Hyatt, 172 N. Y. 176; Matter of Morgan, 20 Fed. 298; People ex rel. Lawrence v. Brady, 56 N. Y. 182.

### FOR WHAT OFFENSES.

The commission of any offense which is the subject of punishment by the laws of the state where the offense was committed may serve as a ground for requisition. The Constitution states "treason, felony, or other crime." Kentucky v. Dennison, 24 How. (U. S.) 66; People v. Donohue, 84 N. Y. 438; Matter of Brown, 112 Mass. 409.

In People v. Donohue, *supra,* the court said that the language of the Constitution is broad, and was plainly intended to embrace every criminal offense, and every act forbidden and made punishable by the law of the state where the crime was committed, and whether such by the common law or express legislative enactment.

This would, of course, include misdemeanors. People v. Brady, 56 N. Y. 182; matter of Heyward, 1 Code Rep. 47; Kentucky v. Dennison, 24 How. (U. S.) 66; Ex parte Reggel, 114 U. S. 642.

" There must be a charge of a crime," said the court in People ex

rel. Lawrence v. Brady, 56 N. Y. 182, " existing against the fugitive in the state demanding his surrender before the demand can legally be made, and it was said by Taney, Ch. J., in Com. of Ky. v. Dennison, (24 How. [U. S.], 104) that it must be a charge made in the regular course of judicial proceedings."

It is necessary that the offense be of a definite character. Thus, in People v. Donohue, *supra,* theft was regarded as sufficiently definite. But the charge of fraudulent appropriation of money was held in Matter of Slauson, 73 Fed. 666, to be too indefinite.

The guilt or innocence of the accused is regarded as wholly immaterial, since that question is to be investigated and determined by the courts of the state where the alleged crime was committed. People ex rel. Lawrence v. Brady, 56 N. Y. 182.

**PERSONS SUBJECT.**

One who has been convicted of a crime (burglary) and escaped after serving only a portion of his sentence, was held in Matter of Hope, 7 N. Y. Crim. R. 406, to be a person charged with a crime. See, also, Drinkall v. Spiegel, 68 Conn. 441.

To be a fugitive from justice it is not necessary that the person sought should have fled from the state where the crime is alleged to have been committed for the purpose of avoiding prosecution. State v. Richter, 37 Minn. 436; Roberts v. Reilly, 116 U. S. 180; Matter of Brown, 36 Fed. 653; People v. Pinkerton, 17 Hun 199.

And in Matter of Keller, 36 Fed. 681, the court held that one may be a fugitive from justice who has fled from the state where the alleged crime was committed to the state of which he is a resident.

The court in Hyatt v. People, 188 U. S. 691, said that the plain meaning of the Act requires the presence in the state at the time when the offense is alleged to have been committed and that it was not intended to include as a fugitive from justice of a state, one who had not been in the state at the time when, if ever, the offense was committed, and who had not in fact fled therefrom.

The fact that the person sought has committed a crime in another state and that he has been found in this state, establishes conclusively that he is a fugitive from justice. People ex rel. Draper v. Pinkerton, 17 Hun 199.

The person sought is entitled under the Act of Congress to insist upon proof that he was within the demanding state at the time he is

alleged to have committed the crime charged, and subsequently withdrew from her jurisdiction, so that he could not be reached by her criminal process; but the statute does not prescribe the character of that proof.  Ex parte Reggel, 114 U. S. 642.

### THE DEMAND—In general.

The federal statutes require that the demand for a fugitive from justice must be in writing and from the executive of the state demanding him.  U. S. Rev. Stat. Sect. 5278.

" It would seem," said the court in Matter of Ryan, 15 Misc. 303, " that it must appear upon the papers that the prisoner is a fugitive from justice, in the sense that he was either present in the state at the time of the commission of the offense charged, or that the crime alleged is of such a character as necessarily to imply the presence of the prisoner within the state at the time it was committed."

It must appear, said the court in Roberts v. Reilly, 116 U. S. 80, to the governor of the staate to whom the demand is presented, before he can lawfully comply with it, first, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the governor of the state making the demand, and, second, that the person demanded is a fugitive from justice of the state the executive authority of which makes the demand.

The court in the Roberts case further said that the first of the above prerequisites is a question of law and is always open on the face of the papers to judicial inquiry on an application for a discharge under a writ of habeas corpus, and that the second is a question of fact, which the governor of the state upon whom the demand is made, must decide upon such evidence as he may deem satisfactory.

### INDICTMENT.

An indictment is, of course, the best evidence to prove that the person sought has been charged with a crime.  In Re Strauss, 126 Feb. 327.

Technical precision in the indictment or affidavit is not required, but it is essential that the accused be definitely informed of the offense with which he is charged.  In Re Strauss, 126 Feb. 327.

A requisition for the return of one charged with embezzlement should not be refused, although the indictment or affidavit would be held insufficient by the courts of the state into which the accused has

fled, if it would be held sufficient by the courts of the demanding state. Webb v. York, 79 Feb. 616.

The executive warrant should not be declared void in habeas corpus proceedings, merely because of some technical defect in the foreign indictment or affidavit, provided the offense is substantially alleged or described. Webb v. York, 79 Feb. 616; In Re Roberts, 24 Feb. 132; In Re White, 45 Fed. 237; Krutz v. State, 22 Fla. 36.

Failure to set out the accused's name in full and stating only the initial letters thereof, does not justify a refusal to issue a warrant. People ex rel. Nubell v. Byrnes, 33 Hun 98. And giving an erroneous date (State v. Clough, 71 N. H. 594), or misdescribing the property stolen (Ex parte Reggel, 114 U. S, 642), does not render the indictment objectionable.

## AFFIDAVIT.

Congress has recognized the fact that exigencies frequently arise when it is impossible to procure an indictment in time to prevent the escape of the offender, and so provided the affidavit as an alternative methods of procedure. In Re Strauss, 126 Fed. 327.

With reference to the affidavit, the court in People v. Brady, 56 N. Y. 182, held that it must describe the crime alleged to have been committed with sufficient certainty and definiteness as to inform the governor of the facts constituting the offense.

A verified complaint or affidavit charging the accused with an infamous crime (obtaining goods by false pretenses) was held in In Re Strauss, 126 Feb. 327, to be sufficient.

But in State v. Richardson, 34 Minn. 115, it was held that a complaint cannot be made a substitute for an affidavit or indictment.

It is generally admitted that an affidavit is insufficient to procure a requisition, if it alleges the commission of a crime on information and belief. Ex parte Morgan, 20 Fed. 298.

As the court said in Ex parte Dimmig, 74 Cal. 165, the liberty of a citizen cannot be violated upon a mere expression of an opinion under oath, that the person demanded is guilty of a crime.

In Ex parte Spears, 88 Cal. 640, the court held that an affidavit stating that the affiant " has reason to believe, and does believe" that the accused fraudulently converted certain property to his own use, is not a statement of any fact, and is therefore insufficient to

support the issuance of a warrant of arrest as a fugitive. Such a defect is not regarded as a mere formal one.

And in Ex parte Smith, 3 McLean 121, the affidavit, among other things, alleged that the affiant " believes, and has good reason to believe, from the evidence and information now in his possession " that the person sought is guilty of a crime. The affidavit was held insufficient as a basis for a governor's warrant because it was not positive in its charge.

Also, a statement that the affiant " verily believes, and has good reason to believe," was held in Ex parte Baker, 43 Tex. Crim. Rep. 281, to be insufficient.

But in Matter of Keeler, 36 Feb. 681, an affidavit charging the crime of embezzlement directly and positively, is not vitiated by the affiant's conclusion, " as said deponent verily believes." The court said : " A man swears to what he believes to be true; and, when he states a fact under oath, he says he verily believes it to be true."

## AUTHENTICATION.

It is necessary that the indictment or affidavit, or a copy thereof, be produced and certified as authentic by the executive of the state from which the person sought has fled.   U. S. Rev. Stat. sect. 5278. In Re Strauss, 126 Feb. 327; Soloman's Case, 1 Abb. Pr. (N. S.) 347.

The law does not prescribe any particular form of authentication, so long as it is certified that the papers are what they purport to be. Ex parte Dawson, 83 Fed. 306; Ex parte Sheldon, 34 Ohio St. 319.

In Matter of Rutter, 7 Abb. Pr. (N. S.) 67, it was held that an authenticated copy of the charge against the accused must be presented and that the affidavit of an attorney containing information received through a telegram that the accused has committed a crime, is insufficient.

## POWERS AND DUTIES OF GOVERNOR.

The authority under which the executive of the state in which the fugitive is found, acts, is derived from the U. S. Constitution. Roberts v. Reilly, 116 U. S. 80; People ex rel. Lawrence v. Brady, 56 N. Y. 182.

It is a condition precedent to the obligation to surrender, that the executive of the state, upon whom the demand is made, be apprised of the facts upon which that duty depends.  People v. Brady, 56 N. Y. 182.

Upon the excutive of the state in which the accused is found rests the responsibility of determining, in some legal mode, whether he is a fugitive from justice of the demanding state, and he does not fail in his duty if he makes it a condition precedent to the surrender of the accused, that it be shown to him, by competent proof, that the accused is, in fact, a fugitive from justice. Ex parte Reggel, 114 U. S. 642.

And it is the executive head of a state alone who has authority to grant a requisition; a fugitive from justice cannot lawfully be taken and delivered up by private persons. Batts v. Williams, 17 B. Mon. (K. Y.) 678. And that power cannot be delegated. In Re Payne, 7 Ohio Dec. 288. Although, in Ex parte Camp, 7 Ohio N. P. 617 is was held that the governor may sign the warrant in blank and his secretary fill it out.

While it is not necessary to the sufficiency of an extradition warrant, when attacked on habeas corpus, that it shall set out in full a copy of the indictment or affidavit upon which it is based, or that it be accompanied by such indictment or affidavit, yet a warrant for the arrest and return of a fugitive from justice must recite or set forth, in substance, the evidence necessary to authorize the executive to issue it. Ex parte Dawson, 83 Fed. 306.

And where the requisition and copy of the indictment accompaning it are not made a part of the return and the warrant alone is before the court, it must show (1) that the demand by requisition has been made for the party in custody as a fugitive from justice; (2) that the requisition was accompanied by a copy of the indictment or affidavit charging the commission of an offense; (3) that the copy of such indictment or affidavit was certified by the governor of the state making the demand as authentic. Ex parte Dawson, 83 Fed. 306.

The recital of a warrant issued in extradition proceedings, that the requisition " is accompanied by the papers required by the statutes of the United States," and that the papers show that the relator has been " duly charged with said crime, and with having fled from said state and taken refuge in the state of New York," and that the papers are duly certified, was held in Matter of Scrafford, 59 Hun 320, to be sufficient.

It seems to be well settled that the warrant of a governor authorizing the extradition of a person charged with an offense against the laws of a sister state, is prima facie evidence that all essential legal prerequisites have been observed; and if the proceedings, when produced, appear to be regular, such presumption become conclusive

evidence of the right to extradite the person charged with the offense. People ex rel. Hamilton v. Police Commrs., 100 App. Div. 483; Davis' Case, 122 Mass. 324.

It is generally conceded that a governor may revoke his warrant for the arrest of a fugitive. State v. Toole, 69 Minn. 104. But the contrary seems to be held in Hosmer v. Loveland, 19 Barb. 111.

## TO WHOM WARRANT ISSUED.

The statutes are silent on the subject to whom the executive warrant may, or should, be issued or directed, and it would therefore appear that the matter should be left to the discretion of the governor. Robinson v. Flanders, 29 Ind. 10.

It is, however, usually addressed to the sheriff of some county. State v. Clough, 71 N. H. 594. But in Com. v. Hall, 9 Gray (Mass.) 262, the court held that it may be directed to the agent of the state making the demand.

## FUGITIVES IN CUSTODY.

It is well settled that the state need not surrender, upon the requisition of another state, a prisoner held in actual custody, either under civil process to secure the payment of a debt, or under criminal process to answer or suffer punishment for a crime. People v. Hagan, 34 Misc. 85.

As was said by the Supreme Court, in Taylor v. Taintor, 16 Wall. 366, " Where a demand is properly made by the governor of one state upon the governor of another, the duty to surrender is not absolute and unqualified. It depends upon the circumstances of the case. If the laws of the latter state have been in force against a fugitive, and he is imprisoned there, the demands of these laws must first be satisfied. The duty of obedience then arises, and not before."

## DETENTION OF FUGITIVES.

Since a state is bound to deliver up a fugitive from justice, the proper officers of the state into which the fugitive has fled have authority, upon common law principles, to aid the demanding state in the fulfillment of the obligation by issuing warrants of arrest upon appropriate evidence in anticipation of the demand of the executive of the state from which the fugitive has escaped, and by virtue of such warrant detaining the fugitive for a reasonable time to await the demand and order of delivery. Morrell v. Quarles, 35 Ala. 544; Holmes v. Gorernor, 14 Peters 540; Hackney v. Welch, 107 Ind. 253.

On this subject, sect. 830 of the N. Y. Crim. Code provides· "If from the examination under such warrant it appears to the satisfaction of the magistrate that the person under arrest is charged in such other state or territory with treason, felony or other crime and has fled from justice, the magistrate, by warrant reciting the accusation, must commit him to the proper custody in his county for a time specified in the warrant, to enable an arrest of the fugitive to be made under the warrant of the governor of this state, which commitment shall not exceed thirty days, exclusive of the day of arrest, on the requisition of the executive authority of the state or territory in which he is charged to have committed the offense, unless he gives bail, * * * *, or until he be legally discharged."

The essential facts to justify the executive in issuing a warrant, are that the person under arrest has been charged in another state or territory with the commission of a crime and has fled from justice. People ex rel. Greenberg v. Warden, etc., 83 App. Div. 456.

The issuance of the warrant is sufficiently justified if· it appears from the papers, to the satisfaction of the magistrate, that the accused is charged in some other state with a crime and has fled from justice, and the proof need not show that his return to the demanding state is justified. People ex rel. Robinson v. Flynn, 54 Misc. 7.

## RIGHT TO BAIL.

The right to bail is usually denied a fugitive from justice. Neither the U. S. Constitution nor the federal statutes authorize the giving of bail in habeas corpus proceedings in extradition cases. In Re Foye, 21 Wash. 250. As was well said in Ex parte Erwin, 7 Tex. App. 288, to permit one arrest as a fugitive from justice to go at large upon bail would be to put him in a situation to defy the mandate of the court and treat its judgments with contempt.

## APPLICATION FOR DISCHARGE.

Whenever a person charged with being a fugitive from justice is arrested under a warrant of the governor of a state for delivery to the authorities of the demanding state, he is entitled to invoke the judgment of the judicial tribunals, either federal or state, by writ of habeas corpus, upon the lawfulness of his arrest and imprisonment. Roberts v. Reilly, 116 U. S. 94; Robb v. Connolly, 111 U. S. 624; Ex parte Hart, 63 Fed. 249; Bruce v. Rayner, 124 Fed. 481.

The question whether a person arrested on a governor's warrant for return to another state on requisition from its governor, is a fugitive

from justice of such state, is one of fact which may be inquired into by the courts on a writ of habeas corpus. Bruce v. Rayner, 124 Fed. 481.

But in that proceeding the court will not receive evidence tending to show the guilt or innocence of the one demanded, in determining the question whether or not he is a fugitive from justice. Bruce v. Rayner, *supra;* In Re White, 55 Fed. 54; Re Black, 87 Fed. 981; People ex rel. Ryan v. Conlin, 15 Misc. 303.

Since to receive such evidence would, in effect, be a trial of the case, whereas the manifest design of the federal statutes and U. S. Constitution, is that the party demanded should be remitted for trial exclusively in the state in which he stands charged with having committed the offense. Bruce v. Rayner, *supra;* in Re Leary, Fed. Cas. No. 8162.

The decisions are not in harmony as to how far the decision of the executive, on the question whether the accused is a fugitive from justice, may be judicially reviewed in habeas corpus proceedings. Roberts v. Reilly, *supra.*

But it is generally held that the conclusion of the governor is *prima facie* and presumptively correct. Robert v. Reilly, *supra:* Ex parte Reggel, 114 U. S. 653; in Re Cook, 49 Fed. 841.

It has been held that if the papers upon which the governor issued the warrant are before the court, it has power to determine whether or not they charge the prisoner with the commission of a crime. In Re Ryan, *supra.*

On habeas corpus proceedings in the case of a requisition from another state, the only question of fact open to challenge is that of the identity of the prisoner. In Re Ryan, *supra.*