THE PEOPLE OF THE STATE OF NEW YORK ex rel. GEORGE WEISS, Appellant, *v.* ALBERT MENNA, as Warden of the Manhattan House of Detention for Men, Respondent.

First Department, May 17, 1966.

*Arnold E. Wallach* of counsel (*Morris Kosut*, attorney), for appellant.

*John A. K. Bradley* of counsel (*H. Richard Uviller* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

McNALLY, J.   This habeas corpus proceeding tests the validity of relator-appellant's detention under an executive warrant in extradition proceedings.   The Governor of the State of Oregon represented to the Governor of the State of New York that relator is " a fugitive from justice " of the State of Oregon.

The Grand Jury of the County of Multnomah, State of Oregon, on February 26, 1965, handed down an indictment against various defendants, including the relator, charging a violation of Oregon Revised Statute 167.151 in that they did in said county knowingly disseminate an obscene motion picture entitled " Olga's House of Shame ".   The letter of the District Attorney for Multnomah County, dated August 30, 1965, states the relator produced and directed the motion picture; it also concedes the relator was not present in the State of Oregon at the time the film was exhibited as alleged in the indictment.   The warrant of the Governor of the State of New York recites, in part, that relator " stands charged in [the State of Oregon] with having committed acts in the State of New York intentionally resulting in a crime in the State of Oregon ".

The parties have proceeded on the assumption that this proceeding is governed by section 834 of the Code of Criminal Procedure (Uniform Criminal Extradition Act) applicable to persons not present in the demanding State at the time of the commission of the alleged crime.   The documents of the demanding State and the warrant under which relator is detained fail to allege the acts committed in the State of New York.   The evidence of the respondent establishes that the relator produced and directed the film in the State of New Jersey under an arrangement whereby American Film Distributors Corporation, organized and existing prior thereto, of which relator is not a stockholder, director or officer, was to distribute the film and the relator was to receive 50% of its net proceeds.

The film consisting of 6,231 feet was on November 23, 1964 licensed to the extent of 5,651 feet by the State of New York, Education Department, Division of Motion Pictures.   It does not appear what part, if any, of the unlicensed film was exhibited in the demanding State.

The court below found the distribution of the film in New York would sustain an information under section 1141 of the Penal Law of the State of New York. Subdivision 1 of section 1141 expressly provides '' this subdivision shall not apply to motion picture films licensed by the state department of education ''. On this record it cannot be determined what part, if any, of the film distributed in the demanding State is in violation of section 1141.

Regardless of the burden of proof the parties to this proceeding tendered their evidence and it is not disputed at the evidentiary level. This makes quite academic the situs of the burden of proof.

The undisputed evidence is that relator produced the questioned film for distribution throughout the United States, and that, following production, he made contractual arrangements for its redistribution by an independent contractor in California. The independent contractor sold the film to persons in the demanding State where it was exhibited. The undisputed evidence further shows that relator, after the fact, admitted knowing that the film had been exhibited in the demanding State.

Unlike ordinary extraditions mandated by the Federal Constitution, extradition, under the uniform act, for acts committed outside the demanding State requires that it be established that '' the acts for which extradition is sought would be punishable by the laws of this state, if the consequences claimed to have resulted therefrom in the demanding state had taken effect in this state ''. (Code Crim. Pro., § 834; cf. id., § 849.)

The proof in this record establishes only that relator had a general purpose of national distribution, and not a specific intention to introduce the film into the demanding State; that its introduction into the demanding State was the result of the acts of an independent contractor in California (to relator's profit, to be sure); and that relator knew at some time prior to the bringing of this proceeding that the film had been exhibited in the demanding State. The other issues as to the contraband nature of the uncut film are resolved in favor of the respondent. These facts, undisputed though they be, do not establish the crime or any crime by relator in the demanding State. The situation is no different from one when a producer of an item for national distribution sells it, and the purchaser brings it into a particular locality where its possession or use is forbidden by law, and the producer eventually learns of the illegal possession or use.

The order should be reversed, on the law, without costs or disbursements, the writ sustained and the relator discharged.

EAGER, J. (dissenting). I would affirm the order dismissing the writ of habeas corpus.

The requisition from the Governor of Oregon directed to the Governor of New York recited " that GEORGE WEISS [relator here] stands charged by indictment in the County of Multnomah of this State with the crime of Disseminating Obscene Matter which I certify to be a crime under the laws of this State, and that the accused while outside of the boundaries of this State, committed an act intentionally resulting in the said crime in this State "; and said requisition requested " that the said fugitive be apprehended and delivered to   *   *   *   agents, who are authorized to receive and convey said fugitive to the State of Oregon, here to be dealt with according to law." On consideration thereof, the Governor of this State issued his warrant properly reciting that the Governor of the State of Oregon had demanded of him that he arrest and deliver George Weiss to certain officers who were authorized to receive him and convey him back to Oregon, and further reciting that said demand was accompanied by a duly authenticated copy of the indictment charging the relator " with having committed a crime in the said State and having taken refuge in the State of New York "; and said warrant of the Governor of New York directed the arrest and delivery of the accused into the custody of officers authorized to receive and convey him back to Oregon pursuant to the requisition of the Governor of that State. Further, the Governor of this State duly issued an executive certificate stating that he " honored the requisition of the Governor of the State of Oregon for the surrender of George Weiss and have issued a warrant for his delivery to   *   *   *   the agents of said demanding State ".

The warrant and the certificate of the Governor of this State are in due form, and the recitals therein and in the papers upon which they were based, are to be taken as prima facie true. The court is bound to honor the warrant and give it full force and effect in the absence of support for relator's claims of lack of jurisdiction. Where, as here, the proceedings for the extradition fully comply with statutory requirements and it appears, prima facie, that the nature of the alleged criminal acts of the relator is such that he is subject to extradition to the demanding State, the burden rests upon him to show facts establishing that he is illegally held. (35 C. J. S., Extradition, § 16, subd. d, pp. 440–442; Ann. 81 A. L. R. 552, 562; Ann. 40 ALR 2d 1151, 1158; see, also, Munsey v. Clough, 196 U. S. 364; People ex rel. Draper v. Pinkerton, 77 N. Y. 245, 247; People ex rel. Jourdan v. Donohue, 84 N. Y. 438; People ex rel. Corkran v. Hyatt, 172 N. Y. 177; People ex rel. Samet v. Kennedy, 285 App. Div. 1116;

*People ex rel. Marshall* v. *Moore,* 167 App. Div. 479; *People ex rel. Arnold* v. *Hoy* [HOPKINS, J.], 32 Misc 2d 824; *People ex rel. Kaufman* v. *O'Brien,* 197 Misc. 1019; *People ex rel. Tumminia* v. *Police Comr.,* 14 Misc 2d 755.) But, here, the relator presented no proof and rested merely on some unsupported argument of counsel.

Upon the return of the writ of habeas corpus, the People duly placed in evidence the requisition from the Governor of the State of Oregon, and the warrant and certificate of the Governor of the State of New York, together with all accompanying papers including a duly authenticated copy of the Oregon indictment. In addition, the People presented due proof of identity of the relator as the person named in the Oregon indictment and requisition. Furthermore, an officer, called by the People, testified to statements by the relator that he was " the producer " of the alleged obscene film which was the subject of the indictment; that he " was producing a series " of such pictures; that the said film was produced in New Jersey; that the film " was produced in 35 millimeter for distribution throughout the United States "; that he was the purchaser of " 50% stocks " of the corporation which distributed the film in Oregon to a subsidiary; and that he " received 50% royalties from the film."

Confronted with the due and prima facie establishment of the existence of the requisite jurisdictional facts (the relator did not claim that the papers were defective in any respect), the relator offered no proofs. On closing argument, his counsel conceded that the relator " produced this picture, and it so indicated on the title of the reel produced it for the American Film Distributing Corporation, a New York corporation with offices in New York for which he made arrangements to be paid 50 per cent of the net of that film." Then counsel argued that the relator was not guilty of any crime committed in Oregon; that he was not a stockholder, officer or director of the American Film Distributing Corporation or of its subsidiary, Olympic International Films, which had distributed the film in the Western States; that he had no discretion in the operation of these companies; and that he had relinquished all control or dominion over the film.

Of course, arguments of counsel may not be accepted as proofs. Furthermore, the actual guilt or innocence of the accused of the crime charged in the foreign indictment is not the proper subject of inquiry in a habeas corpus proceeding here; such issue must await trial in Oregon. (*People ex rel. Jourdan* v. *Donohue, supra,* p. 443; *People ex rel. Edelstein* v. *Warden,* 154 App. Div. 261.)

Section 834 of the Code of Criminal Procedure, authorizing extraditions of persons not present in the demanding State at time of commission of crime, provides: " The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section eight hundred and thirty with committing an act in this state or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, when the acts for which extradition is sought would be punishable by the laws of this state, if the consequences claimed to have resulted therefrom in the demanding state had taken effect in this state; *and the provisions of this title, not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom*". (Emphasis added.)

Section 849, in the same title or chapter, states: " The guilt or innocence of the accused as to the crime with which he is charged may not be inquired into by the governor, or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

Accordingly, in this proceeding we are not concerned with the question of whether or not the relator was in fact guilty of distributing his alleged obscene film in Oregon. It is improper to premise a determination here upon the grounds, as stated in the majority opinion, that the proof " establishes only that the relator had a general purpose of national distribution, and not a specific intention to introduce the film into the demanding state "; and that the facts " do not establish the crime or any crime by relator in the demanding State."

The sole issue here was " whether the acts charged, namely, the distribution of such [film] would be punishable by the laws of New York, if such [film] or similar [films] were distributed in this State." (*People ex rel. Burtman* v. *Silberglitt,* 15 Misc 2d 847, 849.) Special Term, after viewing the film, held that its distribution here would violate section 1141 of the Penal Law (which is the counterpart of the Oregon statute) and, on this basis, and in the absence of any proofs submitted by the relator, properly dismissed the writ.

Concededly, a person may commit a crime in a foreign State as a co-conspirator or vis-a-vis an agent. If his acts committed " in this state or in a third state ", intentionally resulting in the

crime in the foreign State, are such that they '' would be punishable by the laws of this state, if the consequences claimed to have resulted therefrom in the demanding state had taken effect in this state '', he should not be accorded permanent. asylum in New York. (See Code Crim. Pro., § 834.)

Under the circumstances here, this court should fully honor the warrant of the Governor issued in the exercise of his discretion in furtherance of the purposes and provisions of the Uniform Criminal Extradition Act. (Code Crim Pro., § 827 et seq.) The determination of the majority, in disregard of such warrant, has the effect of improperly placing upon the People the burden of establishing here that the relator distributed the film in Oregon. The People were not bound to assemble and present the proofs bearing upon the issue of the relator's guilt of the alleged Oregon crime. The relator should be remanded for a trial of such issue in Oregon.

BREITEL, J. P., and STEVENS, J., concur with McNALLY, J.; EAGER, J., dissents in opinion in which RABIN, J., concurs.

Order, entered on November 30, 1965, reversed, on the law, without costs or disbursements, the writ sustained and the relator-appellant discharged.